UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 16-32 |
| LOUIS AGE JR.<br>LOUIS AGE III<br>    a/k/a "Big Lou"<br>RONALD WILSON JR.<br>KENDRICK JOHNSON<br>STANTON GUILLORY<br>    a/k/a "Nan Nan" | SECTION: M (1) |

## **ORDER & REASONS**

Before the Court is a joint motion by defendants Louis Age Jr., Louis Age III, Ronald Wilson Jr., Kendrick Johnson, and Stanton Guillory (collectively, "Defendants") to suppress the warrantless search of their respective historical cell-site location information ("CSLI") and any other geo-location data as contained in certain cellular telephone records and data obtained by the United States of America (the "Government") by way of applications and orders pursuant to 18 U.S.C. § 2703(d) or 18 U.S.C. §§ 3122-3124, and all fruits thereof.[1] The Government responds in opposition,[2] and Defendants reply in further support of the motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court denies Defendants' motion to suppress finding that the good-faith exception to the exclusionary rule applies.

---

[1] R. Doc. 285. The motion does not apply to the CSLI obtained via the § 2703(b) and pen-trap register orders signed on August 26, 2013 and August 1, 2017. At oral argument, Defendants' counsel conceded that those orders fall within the "safe harbor" period between the Fifth Circuit's ruling on July 30, 2013, in *In re Application of the United States for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013) (holding that a warrant based on probable cause was not needed for law enforcement to obtain CSLI), and the Supreme Court's ruling in *Carpenter v. United States*, 585 U.S. ___, 138 S. Ct. 2206 (2018) (holding that a warrant based on probable cause is required for law enforcement to obtain CSLI).
[2] R. Doc. 310.
[3] R. Doc. 325.

I.  **BACKGROUND**

On August 17, 2017, the grand jury in the United States District Court for the Eastern District of Louisiana returned a superseding indictment in this case charging Defendants with various counts arising from the July 27, 2012 murder of Milton Womack.[4] Womack was a co-defendant in a Medicare fraud case filed in the United States District Court for the Middle District of Louisiana, and styled *United States v. Louis T. Age, Jr. et al.*, Criminal Action No. 11-105. Womack was murdered two days after documents were filed in that case indicating that he was changing his plea to guilty. The Government's theory of this case is that Defendants herein conspired to murder Womack in retaliation for his past cooperation in the Medicare fraud case and to prevent him from testifying at the trial in that matter. Particularly, the Government contends that Age Jr., Age III, Johnson, and Wilson hired Guillory, an alleged member of various New Orleans gangs, to murder Womack.

Count 1 charges Defendants with conspiring to commit murder for hire, in violation of 18 U.S.C. § 1958.[5] Count 2 charges Defendants with using a facility of interstate commerce (a cell phone) to commit murder for hire, in violation of 18 U.S.C. §§ 1958 and 2.[6] In Count 3, Defendants are charged with conspiring to murder Womack to prevent him from testifying in the Medicare fraud case, in violation of 18 U.S.C. §§ 1512(a)(3)(A) and 1512(k).[7] Count 4 charges Defendants with killing Womack to prevent him from testifying in the Medicare fraud case, in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(3)(A), and 2.[8] Count 5 charges Age Jr. and Age III with killing Womack to prevent him from communicating with law enforcement about his knowledge of the Medicare fraud scheme, in violation of 18 U.S.C. §§ 1512(a)(1)(C),

---
[4] R. Doc. 52.
[5] *Id.* at 2.
[6] *Id.* at 2-3.
[7] *Id.* at 3-4.
[8] *Id.* at 4-5.

1512(a)(3)(A), and 2.[9] In Count 6, Defendants are charged with conspiring to murder Womack in retaliation for his cooperation with law enforcement, in violation of 18 U.S.C. §§ 1513(a)(2)(A) and 1513(f).[10] Count 7 charges Defendants with killing Womack in retaliation for his cooperation with law enforcement, in violation of 18 U.S.C. §§ 1513(a)(1)(B), 1513(a)(2)(A), and 2.[11] Count 8 charges Johnson, Age Jr., and Age III with conspiring to use intimidation, threats, and corrupt persuasion to influence, delay, or prevent testimony in the Medicare fraud case and hindering, delaying, and preventing further communication with law enforcement relating to the commission or possible commission of a federal offense (healthcare fraud), all in violation of 18 U.S.C. § 1512(k).[12] In Count 9, Johnson, Age Jr., and Age III are charged with conspiring to retaliate against a witness for aiding law enforcement in the Medicare fraud case, in violation of 18 U.S.C. § 1513(f).[13] Count 10 charges Johnson with making false statements to the grand jury regarding Womack's murder, in violation of 18 U.S.C. § 1623.[14] In Count 11, Age III is charged with making false statements to FBI agents in violation of 18 U.S.C. § 1001.[15]

## II. PENDING MOTION

In the course of investigating this matter, the Government obtained several § 2703(d) orders from magistrate judges in this district requiring wireless carriers to produce CSLI for cellular telephone numbers believed to be associated with Defendants.[16] On August 10, 2012, the Government's first set of § 2703(d) orders in this case were presented to, and signed by, a magistrate judge.[17] Between October and November 2012, the Government applied for and

---

[9] *Id.* at 5.
[10] *Id.* at 5-6.
[11] *Id.* at 6.
[12] *Id.* at 6-8.
[13] *Id.* at 8-9.
[14] *Id.* at 9-10.
[15] *Id.* at 10-11.
[16] R. Doc. 285-1 at 4-15.
[17] *Id.*

obtained four more § 2703(d) orders in this case.[18] The Government obtained another such order on August 26, 2013, and a pen-trap register order pursuant to 18 U.S.C. §§ 3122-3124 on August 1, 2017.[19] Defendants move to suppress the data the Government received in connection with all of the § 2703(d) orders issued prior to July 30, 2013, arguing that the data was unconstitutionally obtained without a warrant and that no exception to the exclusionary rule applies because the Government was not acting in good faith in applying for the orders when the Government knew that a district court within the Fifth Circuit had found § 2703(d) orders to be unconstitutional.[20]

Defendants' argument is premised on the timeline of the Government's § 2703(d) applications in this case and the unfolding jurisprudence on the constitutionality of warrantless compelled production under the statute. At the time the Government made its first § 2703(d) applications in this case, on August 10, 2012, a magistrate judge in the Southern District of Texas, which is within the Fifth Circuit, had held § 2703(d) orders to be unconstitutional in *In re Application of the United States of America for Historical Cell Site Data*, 747 F. Supp. 2d 827 (S.D. Tex. 2010).[21] The government in that case sought review of the magistrate judge's order by a district judge.[22] On November 11, 2011, a district judge in the Southern District of Texas overruled the government's objections to the magistrate judge's order, agreeing that warrantless compelled production under § 2703(d) was unconstitutional.[23] The government filed its notice of appeal to the Fifth Circuit on December 12, 2011.[24] Briefing was completed in March 2012, and on August 3, 2012, the Fifth Circuit scheduled oral argument for the first week of October 2012.[25]

---

[18] *Id.*
[19] *Id.*
[20] *Id.* at 15-20; R. Doc. 325.
[21] R. Doc. 325 at 3-6.
[22] R. Doc. 325-2 at 1.
[23] *Id.* at 2.
[24] *Id.*
[25] R. Doc. 325-3 at 4-7.

4

It was at this time, on August 10, 2012, that the Government began making § 2703(d) applications in this case. Defendants argue that the Government was not in good faith when it made those applications because it was on notice that the constitutionality of § 2703(d) orders was in question, and it was actively appealing the issue to the Fifth Circuit.[26] Defendants argue that the Government was reckless or grossly negligent in continuing to pursue § 2703(d) orders to obtain CSLI data instead of obtaining unquestionably constitutionally-sound warrants and for failing to inform the magistrate judges, to whom applications were made, of the lower court opinions in *Historical Cell Site Data* holding § 2703(d) orders to be unconstitutional.[27] Essentially, Defendants argue that the Government could not continue to rely on § 2703(d) to obtain orders for CLSI data without warrants, after a district court within the circuit had found them to be unconstitutional and when the issue was pending on appeal, because there is a public interest in encouraging the Government to err on the side of constitutional behavior.[28]

In opposition, the Government argues that it was acting in good faith when it obtained the § 2703(d) orders because such orders were not clearly unconstitutional and there was no binding Fifth Circuit precedent so holding.[29] The Government points to the decisions of the vast majority of courts around the country to have considered the issue as of the relevant period holding § 2703(d) orders to be constitutional.[30] Further, multiple magistrate judges in this district issued the subject § 2703(d) orders based on the Government's applications, and the Government was not required to disclose a non-binding out-of-district opinion, even if contrary, of which a reasonable magistrate judge should have been aware anyway.[31]

---

[26] R. Doc. 325 at 5-6.
[27] *Id.* at 1-11.
[28] *Id.*
[29] R. Doc. 310 at 5-8.
[30] *Id.*
[31] *Id.*

## III. LAW & ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Its purpose "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Carpenter v. United States*, 585 U.S. ___, 138 S. Ct. 2206, 2213 (2018) (quotation and citation omitted). To that end, the Fourth Amendment "protects against government intrusion into areas where people have reasonable expectations of privacy." *United States v. Beverly*, 943 F.3d 225, 232 (5th Cir. 2019) (citing, *inter alia*, *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). Thus, the government generally needs a warrant supported by probable cause when it "seeks to intrude upon such private spheres." *Id.* (citing *Carpenter*, 138 S. Ct. at 2213).

The Fourth Amendment does not contain any provision "expressly precluding the use of evidence obtained in violation of its commands." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 906 (1984)). However, courts have created the "exclusionary rule" that "precludes the use of evidence obtained from an unconstitutional search or seizure." *Id.* The purpose of the exclusionary rule is not to remedy the unlawful search and seizure itself, but rather "to safeguard Fourth Amendment rights generally through its deterrent effect," and encourage law enforcement to engage in constitutional behavior. *Id.* (quoting *Leon*, 468 U.S. at 906).

"An exception to the exclusionary rule exists where government investigators acted with an objectively reasonable good-faith belief that their conduct was lawful." *Id.* (citing *Davis v. United States*, 564 U.S. 229, 238 (2011)). The "good-faith exception" is premised "in the observation that where official action is 'pursued in complete good faith … the deterrence rationale [of the exclusionary rule] loses much of its force.'" *Id.* (quoting *Leon*, 468 U.S. at 919).

Courts have applied the good-faith exception "to evidence obtained from *warrantless* searches later held to be unconstitutional." *Id.* at 233 (emphasis in original). "In *Illinois v. Krull*, … the Supreme Court applied the good-faith exception where officers had 'act[ed] in objectively reasonable reliance upon a *statute* authorizing warrantless administrative searches, but where the statute [was] ultimately found to violate the Fourth Amendment." *Id.* (quoting *Illinois v. Krull*, 480 U.S. 340, 342 (1987)) (emphasis in *Krull*). The *Krull* exception is based on the reasoning "that if a 'statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written.'" *Id.* (quoting *Krull*, 480 U.S. at 350). "Similarly, the Supreme Court has applied the good-faith exception to a warrantless search that complied with *binding appellate precedent* that was later overruled." *Id.* (citing *Davis*, 564 U.S. at 232) (emphasis added).

Congress enacted the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2711, in 1986. As amended in 1994, the SCA permitted the government entities to secure a court order to obtain certain customer information maintained by cell phone providers without a warrant "if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

In *Carpenter v. United States*, 138 S. Ct. at 2220-21, the Supreme Court held that the government's acquisition of CSLI constitutes a "search" under the Fourth Amendment; and that orders issued pursuant to § 2703(d) violated the Fourth Amendment by allowing the government to obtain CSLI without a warrant supported by probable cause. Thus, the 2018 decision in *Carpenter* effectively overturned the Fifth Circuit's then-existing precedent of *In re Application*

7

*of the United States for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013), where the court held that § 2703(d) was constitutional even when applied to the warrantless compelled disclosure of historical CSLI because CSLI records were business records of the cell service providers in which the users did not have a reasonable expectation of privacy.

This change in the law raised the question whether the good-faith exception applies to data obtained pursuant to § 2703(d) orders that were issued without warrants after the Fifth Circuit's decision in *Historical Cell Site Data* (July 30, 2013), but before the Supreme Court's *Carpenter* decision came down (June 22, 2018). In *United States v. Beverly*, 943 F.3d at 235, the Fifth Circuit answered this question in the affirmative holding that the *Krull/Davis* good-faith exception applies to such data. The court reasoned that, at the time of a warrantless search conducted under § 2703(d) orders issued during this interval, law enforcement relied on "a statute that was not found to be unconstitutional until after the search," and also "had been deemed constitutional at the time of the search by then-controlling judicial precedent." *Id.* (citing *Krull*, 480 U.S. at 350; *Davis*, 564 U.S. at 235).

The motion before this Court presents a slightly different question: whether the *Krull* good-faith exception applies to CSLI obtained in this district pursuant to § 2703(d) orders that were sought and signed *before* the Fifth Circuit issued its then-binding appellate precedent in *Historical Cell Site Data* (July 30, 2013), but *after* a lower court in another district within the Fifth Circuit had found § 2703(d) orders to be unconstitutional (August 10, 2012). To defeat the application of the good-faith exception, Defendants must demonstrate that the Government acted with "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Davis*, 564 U.S. at 238. But if the Government obtained the CSLI in "objectively reasonable reliance" on the § 2703(d) orders the Supreme Court later held invalid, then the good-faith exception would apply. *Id.* Defendants argue that the prosecutors in this case acted recklessly or with

gross negligence when they applied for the § 2703(d) orders in 2012, instead of applying for warrants, because they knew at that time that the constitutionality of such orders was being questioned. Essentially, Defendants argue that the Government cannot rely in good faith on the statute when a lower court outside this district but within the Fifth Circuit had held it to be unconstitutional, even though the appellate court had not yet handed down binding precedent on the issue.

Defendants' argument is unpersuasive. The prosecutors in this case were not reckless or grossly negligent, but were objectively reasonable, in relying on § 2703(d) in 2012. At that time, the constitutionality of § 2703(d) was being debated in federal courts throughout the country, but the statute, as a basis for compelled production of historical CSLI, was far from established as clearly unconstitutional. *See Krull*, 480 U.S. at 349-50 ("Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law."). In 2012, there was no controlling Supreme Court or Fifth Circuit precedent directly addressing the constitutionality of § 2703(d) orders; thus, the statute was presumed to be constitutional. *United States v. Letellier*, 2015 WL 6157899, at *3 (D. Mass Oct. 20, 2015) (citing *Krull*, 480 U.S. at 351) (concluding it was objectively reasonable for officers to rely on § 2703(d) to obtain historical CSLI, despite decisions questioning constitutionality of statute, where there was no controlling Supreme Court or circuit precedent on the issue); *see also United States v. Anderson*, 2016 WL 4191045, at *8 (D. Nev. Apr. 27, 2016) ("Where, as here, the SCA specifically authorizes a government entity to obtain historical cell site location information based on an order under the 'specific and articulable facts' standards, and no controlling authority has required a warrant based on probable cause, the court finds the good faith exception to the exclusionary rule applies.").

Indeed, in October 2012 (a date, like those of the § 2703(d) orders at issue here, which lies in the nether region between the lower court and Fifth Circuit decisions in *Historical Cell Site Data*), another section of this Court observed that, as of then, a majority of cases weighing the constitutionality of § 2703(d) orders had held that a search warrant was not required to obtain CSLI. *United States v. Hardrick*, 2012 WL 4883666, at *6 (E.D. La. Oct. 15, 2012) (citing *In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Servs. to Disclose Records*, 620 F.3d 304, 306-08 (3d Cir. 2010); *United States v. Graham,* 846 F. Supp. 2d 384, 404 (D. Md. 2012); *In re Application for an Order Authorizing the Release of Historical Cell-Site Info.,* 2011 WL 679925, at *2 (E.D.N.Y. Feb. 16, 2011); *United States v. Dye,* 2011 WL 1595255, at *9 (N.D. Ohio Apr. 27, 2011); *United States v. Velasquez,* 2010 WL 4286276, at *4-6 (N.D. Cal. Oct. 22, 2010); *United States v. Benford*, 2010 WL 1266507, at *2-3 (N.D. Ind. Mar. 26, 2010); *United States v. Suarez-Blanca,* 2008 WL 4200156, at *8 (N.D. Ga. Apr. 21, 2008); *In re Applications of U.S. for Orders Pursuant to 18 U.S.C. § 2703(d),* 509 F. Supp. 2d 76, 80-81 (D. Mass. 2007)). At that same time, a minority of courts having considered the issue – including the Southern District of Texas's decision in *Historical Cell Site Data*, which Defendants say should have placed the Government on notice of the statute's constitutional infirmity – held that a search warrant was required. *Id.* (citing *In re Application of U.S. for an Order Authorizing the Release of Historical Cell-Site Info.,* 809 F. Supp. 2d 113, 126-27 (E.D.N.Y. 2011); *Historical Cell Site Data,* 747 F. Supp. 2d at 844-46, with appeal to Fifth Circuit having been docketed). Given the absence of binding precedent, and given the uneven split of authority among district courts nationwide favoring constitutionality, the Government had no reason to believe that the statute was clearly unconstitutional when it sought the § 2703(d) orders in the Eastern District of Louisiana in 2012.

That one of the two minority decisions happened to arise within the Fifth Circuit does not alter this conclusion. The decisions of another federal district court are not controlling law. *See Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 428 (2011) ("[F]ederal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court."); *Walsh v. Hagee*, 316 F.R.D. 1, 2 (D.D.C. 2014) (same in Fourth Amendment case). Thus, even had the decision in *Historical Cell Site Data* emanated from the Eastern District of Louisiana, rather than the Southern District of Texas, it would not have been binding on other judges asked to consider the Government's applications for § 2703(d) orders in 2012. There is little doubt, then, that absent controlling Supreme Court or Fifth Circuit precedent, the Government acted with objectively reasonable reliance upon the SCA in obtaining the orders.[32]

In *United States v. Korte*, 918 F.3d 750, 757-59 (9th Cir. 2019), the court considered whether evidence collected from § 2703(d) orders issued pre-*Carpenter* is admissible under the good-faith exception to the exclusionary rule, and held that it is. The court reasoned that the *Krull* good-faith exception clearly applies because the government obtained the evidence while "acting in 'objectively reasonable reliance upon a *statute.*'" *Id.* at 758 (emphasis in original) (quoting *Krull*, 480 U.S. at 342). The court stated that it could not "say that the [g]overnment had any reason to doubt the SCA's constitutionality, such that it may have been acting in bad faith" considering that there was no binding appellate precedent and the "prevailing belief"

---

[32] A similar analysis undermines the Defendants' argument that suppression is warranted because there is no indication that the Government disclosed the *Historical Cell Site Data* decision to the magistrate judges considering its § 2703(d) applications in 2012. A lawyer has the duty to disclose to the court legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the lawyer's client. La. R. Prof. Conduct 3.3(a)(2). The Government had that duty in making its applications to the magistrate judges for § 2703(d) orders. However, because the lower court decisions in *Historical Cell Site Data* did not constitute "legal authority in the controlling jurisdiction," the Government had no duty to disclose such authority to the magistrate judges, who, like all judges, are presumed to know the law and to apply it in making their decisions. *See, e.g., United States v. Barnes*, 126 F. Supp. 3d 735, 741 (E.D. La. Aug. 27, 2015) (applying presumption in context of affidavit for search warrant); *United States v. Tabares*, 2016 WL 11258758, at *19 (N.D. Ga. June 3, 2016) (same).

among other circuits affirmed the SCA's constitutionality under the Fourth Amendment. *Id.* The court also stated that "it is hardly objectively unreasonable to rely on a then-lawful statute when courts were upholding it or similar legislative schemes." *Id.* Further, the court noted that applying the *Krull* good-faith exception in such circumstances was in line with the deterrence purpose of the exclusionary rule because excluding "CSLI obtained in good faith based on a then-lawful legislative scheme … would do nothing to prevent future Fourth Amendment violations." *Id.* at 759 (citing *Davis*, 564 U.S. 236-37).

The reasoning of *Krull* and *Korte* applies to the facts before this Court. At the time the Government made the § 2703(d) applications in this case, it was acting in good faith on the basis of a *statute* that was not clearly unconstitutional. While there was a split of authority among the district courts regarding the SCA's constitutionality, the vast majority of district courts to consider the issue had found it to be constitutional in authorizing the compelled disclosure of CSLI, and there was no binding Supreme Court or Fifth Circuit precedent holding the statute unconstitutional. Thus, the Government acted in good faith in relying on a then-lawful statute to obtain, in 2012, the § 2703(d) orders at issue here. Excluding the CSLI obtained thereby would not advance the deterrence objective of the exclusionary rule because it would do nothing to prevent future Fourth Amendment violations. Although the Supreme Court has since held in *Carpenter* that obtaining CSLI without a warrant violates the Fourth Amendment, the good-faith exception to the exclusionary rule applies in this case, and Defendants' motion to suppress is DENIED.

IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' joint motion to suppress warrantless search of CSLI and other geo-location information and all fruits thereof (R. Doc. 285) is DENIED.

New Orleans, Louisiana, this 16th day of March, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE