UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 16-32 |
| LOUIS AGE JR.<br>LOUIS AGE III<br>    a/k/a "Big Lou"<br>RONALD WILSON JR.<br>KENDRICK JOHNSON<br>STANTON GUILLORY<br>    a/k/a "Nan Nan" | SECTION: M (1) |

## **ORDER & REASONS**

Before the Court is a motion by defendant Stanton Guillory to suppress evidence seized from his jail cell pursuant to a search warrant.[1] The Government responds in opposition,[2] and Guillory replies in further support of the motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court denies Guillory's motion to suppress, finding that the search warrant was valid.

## I.    BACKGROUND

On February 26, 2016, the grand jury in the United States District Court for the Eastern District of Louisiana returned an indictment in this case charging Guillory with one count of murder for hire in violation of 18 U.S.C. §§ 1958 and 2 arising from the July 27, 2012 murder of Milton Womack.[4] At that time, Guillory was in the custody of the State of Louisiana for his involvement in a double murder that occurred in Orleans Parish prior to Womack's death.[5]

---

[1] R. Doc. 287.
[2] R. Doc. 308.
[3] R. Doc. 326.
[4] R. Doc. 3 at 1.
[5] R. Doc. 287-1 at 6.

1

Guillory was brought into federal custody and has been moved several times between federal contract detention centers because he committed acts of violence upon other inmates, multiple obscenity offenses, and other crimes.[6]

On August 17, 2017, the grand jury returned a superseding indictment in this case charging Guillory and four co-defendants, Louis Age Jr., Louis Age III, Ronald Wilson Jr, and Kendrick Johnson (collectively, "Defendants"), with various counts arising from Womack's murder.[7] Womack was a co-defendant in a Medicare fraud case filed in the United States District Court for the Middle District of Louisiana, and styled *United States v. Louis T. Age, Jr. et al.*, Criminal Action No. 11-105. Womack was murdered two days after documents were filed in that case indicating that he was changing his plea to guilty. The Government's theory of this case is that Defendants herein conspired to murder Womack in retaliation for his past cooperation in the Medicare fraud case and to prevent him from testifying at the trial in that matter. Particularly, the Government contends that Age Jr., Age III, Johnson, and Wilson hired Guillory, an alleged member of various New Orleans gangs, to murder Womack.

Count 1 charges Defendants with conspiring to commit murder for hire, in violation of 18 U.S.C. § 1958.[8] Count 2 charges Defendants with using a facility of interstate commerce (a cell phone) to commit murder for hire, in violation of 18 U.S.C. §§ 1958 and 2.[9] In Count 3, Defendants are charged with conspiring to murder Womack to prevent him from testifying in the Medicare fraud case, in violation of 18 U.S.C. §§ 1512(a)(3)(A) and 1512(k).[10] Count 4 charges Defendants with killing Womack to prevent him from testifying in the Medicare fraud case, in

---

[6] *Id.*
[7] R. Doc. 52.
[8] *Id.* at 2.
[9] *Id.* at 2-3.
[10] *Id.* at 3-4.

violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(3)(A), and 2.[11] Count 5 charges Age Jr. and Age III with killing Womack to prevent him from communicating with law enforcement about his knowledge of the Medicare fraud scheme, in violation of 18 U.S.C. §§ 1512(a)(1)(C), 1512(a)(3)(A), and 2.[12] In Count 6, Defendants are charged with conspiring to murder Womack in retaliation for his cooperation with law enforcement, in violation of 18 U.S.C. §§ 1513(a)(2)(A) and 1513(f).[13] Count 7 charges Defendants with killing Womack in retaliation for his cooperation with law enforcement, in violation of 18 U.S.C. §§ 1513(a)(1)(B), 1513(a)(2)(A), and 2.[14] Count 8 charges Johnson, Age Jr., and Age III with conspiring to use intimidation, threats, and corrupt persuasion to influence, delay, or prevent testimony in the Medicare fraud case and hindering, delaying, and preventing further communication with law enforcement relating to the commission or possible commission of a federal offense (healthcare fraud), all in violation of 18 U.S.C. § 1512(k).[15] In Count 9, Johnson, Age Jr., and Age III are charged with conspiring to retaliate against a witness for aiding law enforcement in the Medicare fraud case, in violation of 18 U.S.C. § 1513(f).[16] Count 10 charges Johnson with making false statements to the grand jury regarding Womack's murder, in violation of 18 U.S.C. § 1623.[17] In Count 11, Age III is charged with making false statements to FBI agents in violation of 18 U.S.C. § 1001.[18]

On March 22, 2019, Federal Bureau of Investigation special agent William C. Williams applied for a warrant to search Guillory's jail cell and possessions in the St. Bernard Parish Detention Center ("SBPDC") for evidence relevant to violations of federal law, including 18

---

[11] *Id.* at 4-5.
[12] *Id.* at 5.
[13] *Id.* at 5-6.
[14] *Id.* at 6.
[15] *Id.* at 6-8.
[16] *Id.* at 8-9.
[17] *Id.* at 9-10.
[18] *Id.* at 10-11.

U.S.C. §§ 1510-1513 (obstruction of justice).[19] In the affidavit in support of the search warrant, Williams explained that Guillory is an associate of Sidney Lebanks and Lilbear George, who were both incarcerated in parish jails (federal contract detention centers) on federal criminal charges.[20] Lebanks was held in the St. Charles Parish Detention Center ("SCPDC"), and George was in the St. Tammany Parish Detention Center ("STPDC"), after having been moved from the SBPDC and the SCPDC.[21] Deputies at the SCPDC inspected a letter from Lebanks to Guillory before it entered the mail.[22] In the letter, which was attached to Williams's affidavit, Lebanks appears to use coded language to identify to Guillory cooperating witnesses within the jail system.[23] Williams attested that he believed that Lebanks's identification of cooperating witnesses to Guillory may endanger the safety of those witnesses because: (1) Guillory had been repeatedly disciplined for beating other inmates; (2) he was facing state charges for a battery he and George committed on another inmate in the SBPDC; (3) he was convicted in the 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana, for battery upon another inmate in the STPDC; and (4) he was facing federal charges for murdering Womack, a federal witness.[24] In sum, Williams stated that he believed the letter demonstrated Guillory's use of the mail to communicate with other inmates about cooperating witnesses and, for that reason, "Guillory may be in possession of letters, notes, and other forms of communication that discuss possible cooperating witnesses."[25]

Relying on Williams's sworn affidavit and the attachments thereto, a federal magistrate judge signed a search warrant for Guillory's jail cell and the front office federal division in the

---

[19] R. Doc. 287-1.
[20] *Id.* at 6.
[21] *Id.*
[22] *Id.*
[23] *Id.* at 6-7 & 13-14.
[24] *Id.* at 7-8.
[25] *Id.* at 8 (capitalization omitted).

SBPDC.[26] The search warrant authorized the search for and seizure of "[e]vidence relevant to violations of federal law including [18 U.S.C. §]§ 1510-1513 (Obstruction of Justice), including, but not limited to, journals, notebooks, letters, and other papers that may contain admissions by Stanton Guillory or co-conspirators."[27]

## II. PENDING MOTION

Guillory moves to suppress evidence obtained pursuant to the March 22, 2019 search warrant.[28] Guillory argues that, as a pretrial detainee, he retained a right of privacy in his jail cell, and thus a valid warrant was required when the search was conducted at the behest of prosecutors, rather than by jail officials for safety reasons.[29] Guillory also argues that there was no probable cause for the issuance of the search warrant because there were no articulable facts in Williams's affidavit indicating a violation of the cited statutes: (1) 18 U.S.C. § 1510 (obstruction of justice by bribery or by an officer of a financial institution); (2) 18 U.S.C. § 1511 (obstruction of state or local law enforcement to facilitate illegal gambling); (3) 18 U.S.C. § 1512 (murder, attempted murder, or use or attempted use of physical force for intimidation of a witness to prevent cooperation with law enforcement); or (4) 18 U.S.C. § 1513 (murder, attempted murder, or use or attempted use of physical force for intimidation of a witness in retaliation for cooperation with law enforcement).[30] Guillory concedes that Williams's affidavit alleges that Guillory committed acts of violence against other inmates, but argues that there is no indication that such acts were to accomplish the purposes of § 1512 or § 1513.[31] Further, Guillory argues that there is an innocent interpretation of the letter, namely that Lebanks was

---

[26] *Id.* at 17-18.
[27] *Id.* at 17-18 & 12 (capitalization omitted).
[28] R. Doc. 287.
[29] R. Doc. 326 at 1-4.
[30] R. Doc. 287-3 at 2-3.
[31] *Id.* at 3.

alerting Guillory to another inmate's sexuality, not cooperation with the Government.[32] Finally, Guillory argues that the good-faith exception to the exclusionary rule is inapplicable because: (1) the affidavit was so facially deficient that the executing officer could not reasonably presume it to be valid; and (2) the affidavit was so lacking the indicia of probable cause that it was entirely unreasonable for an officer to believe it existed.[33]

In opposition, the Government argues that the motion to suppress should be denied because (1) a warrant was unnecessary to conduct the search and (2) a valid warrant was obtained in any event.[34] The Government argues that no jailed person, whether a pretrial detainee or convict, has any expectation of privacy in his jail cell, and thus a warrant was not necessary to conduct the search.[35] The Government further argues that, even if the warrant obtained was not valid (though the Government insists it was), the good-faith exception applies because it was not objectively unreasonable for the magistrate judge to find that probable cause existed to issue the search warrant considering Williams's reasonable interpretation of the letter, along with the nature of Guillory's pending federal charge and propensity to engage in acts of violence against other inmates.[36]

## III.  LAW & ANALYSIS

### A. Applicability of the Fourth Amendment

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Its purpose "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Carpenter v. United States*, 585 U.S. ___, 138 S. Ct. 2206,

---

[32] *Id.* at 4-5. Guillory argues that the urban dictionary defines "st8" as a "bisexual or homosexual male who is in denial of his sexuality." *Id.* at 5.
[33] R. Doc. 326 at 5-6.
[34] R. Doc. 308.
[35] *Id.* at 3-5.
[36] *Id.* at 5-9.

2213 (2018) (quotation and citation omitted). To that end, the Fourth Amendment "protects against government intrusion into areas where people have reasonable expectations of privacy." *United States v. Beverly*, 943 F.3d 225, 232 (5th Cir. 2019) (citing, *inter alia*, *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). Thus, the government generally needs a warrant supported by probable cause when it "seeks to intrude upon such private spheres." *Id.* (citing *Carpenter*, 138 S. Ct. at 2213).

In *Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984), the Supreme Court held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." The Court further noted that "[t]he recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." *Id.* at 526. The Fifth Circuit has described *Hudson*'s holding as a "*per* se" and "bright line rule" that the Fourth Amendment does not apply to jail cells. *United States v. Ward*, 561 F.3d 414, 417 & 419 (5th Cir. 2009) (finding that under *Hudson* a prison escapee could not invoke the Fourth Amendment to suppress evidence obtained from a warrantless search of his motel room and bag); *see also United States v. Guerrero*, 2011 WL 13114250, at *2 (W.D. Tex. June 27, 2011) (recognizing *Hudson* as establishing a "bright line rule" that the Fourth Amendment does not apply to prison cells); *United States v. Melancon*, 2010 WL 324007, at *8-9 (E.D. La. Jan. 21, 2010) (expanding *Hudson* beyond the cell to find that a prisoner did not have an expectation of privacy in the prison visitation room); *United States v. Owens*, 2009 WL 3379110, at *2 (W.D. La. Oct. 19, 2009) (recognizing that *Hudson* established "as a per se rule [that] a prisoner cannot invoke the Fourth Amendment" concerning a search of his prison cell).

Guillory, citing *United States v. Cohen*, 796 F.2d 20 (2d Cir. 1986), argues that *Hudson* is distinguishable on its facts, and thus its holding does not apply to him.[37] In *Cohen*, the court held that a pretrial detainee maintains a limited expectation of privacy in his prison cell and a valid warrant is required when a search of the cell is initiated by prosecutors to advance their case (including, specifically, "to uncover information that would aid them in laying additional indictments against a detainee"), rather than by prison officials for institutional security needs. *Id.* at 23-24. The court "read *Hudson* to hold that *prison officials* are presumed to do their best to evaluate and monitor objectively the security needs of the institution and the inmates in their custody, and then to determine whether and when such concerns necessitate a search of a prison cell." *Id.* at 23 (emphasis in original). Thus, in reversing the district court's refusal to suppress the evidence obtained in the search of the detainee's cell, the Second Circuit found that "no institutional need [was] being served" when the prosecutors initiated the search, even though no constitutional challenge would stand if *prison officials* had initiated it "regardless of whether security needs could justify it." *Id.* at 24.

Contrary to Guillory's position, it is *Cohen*, not *Hudson*, that is distinguishable from the facts surrounding the search of Guillory's cell. There are at least three notable differences. First, Guillory was not simply a pretrial detainee; instead, he was a convicted prisoner serving time for battery upon another inmate. In *Willis v. Artuz*, 301 F.3d 65 (2d Cir. 2002), the Second Circuit itself made clear that its holding in *Cohen* was confined to searches of a pretrial detainee's cell unrelated to the needs of prison security. *Id.* at 68. In contrast, "a *convicted prisoner*'s loss of privacy rights can be justified on grounds other than institutional security," including "certain penological interests … such as punishment and rehabilitation." *Id.* at 69 (emphasis added). Accordingly, the *Willis* court concluded that the warrantless search of the cell of a convicted

---

[37] R. Doc. 326 at 1-4.

prisoner (as opposed to a pretrial detainee), conducted at the behest of police seeking evidence of uncharged crime, did not violate the prisoner's Fourth Amendment right to be free from unreasonable searches, even if the search did not serve any purpose related to prison security. Denial of Guillory's motion to suppress is justified on this ground alone.

Second, even if Guillory was just a pretrial detainee, the search of Guillory's cell implicated prison safety concerns because he had a history of inflicting violence upon other inmates at the time of the search. *See United States v. Hogan*, 539 F.3d 916, 923-24 (8th Cir. 2008) (*Cohen* not adopted when search of cell instigated for "security reasons and was not intended *solely* to bolster the prosecution's case") (emphasis added); *Woodson v. Gibbs*, 2014 WL 1663964, at *3 (E.D. Pa. Apr. 25, 2014) (*Hudson* applied to pretrial detainee when security of detention center was impetus for search).

Third, and most significantly, *Cohen* is also distinguishable from this case because the Government here obtained a warrant to search Guillory's cell. *United States v. Mohsen*, 2005 WL 8160187, at *3 (N.D. Cal. Dec. 22, 2005) (recognizing *Cohen* does not apply when the government has a search warrant). Thus, while *Hudson*, along with the Fifth Circuit's observations that *Hudson* creates a "per se" or "bright line" rule that the Fourth Amendment does not apply to prison cells, teach that the seizure of evidence from Guillory's cell, even had it been warrantless, should not be suppressed, the warrant obtained for the search undoubtedly renders it free from constitutional infirmity.

**B. Exclusionary Rule and Good-Faith Exception**

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. While the Fourth Amendment does not contain any provision "expressly precluding the use of evidence obtained in violation of its

9

commands," courts have created the "exclusionary rule" that "precludes the use of evidence obtained from an unconstitutional search or seizure." *United States v. Beverly*, 943 F.3d at 232 (quoting *United States v. Leon*, 486 U.S. 897, 906 (1984)). The purpose of the exclusionary rule is not to remedy the unlawful search and seizure itself, but rather "to safeguard Fourth Amendment rights generally through its deterrent effect," and encourage law enforcement to engage in constitutional behavior. *Id.* (quoting *Leon*, 468 U.S. at 906). To that end, "[t]he exclusionary rule requires courts to suppress evidence seized on the basis of a warrant that is unsupported by probable cause." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006)

Courts employ a two-step process in evaluating a motion to suppress evidence discovered pursuant to a search warrant. *United States v. Sibley*, 448 F.3d 754, 757-58 (5th Cir. 2006) (citation omitted). First, the court must determine whether the good-faith exception to the exclusionary rule applies. *Id.* at 757. If so, the analysis ends, and the motion to suppress is denied. *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999). "'The good-faith exception provides that where probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable, the evidence obtained from the search will not be excluded.'" *Sibley*, 448 F.3d at 757 (quoting *United States v. Cavazos,* 288 F.3d 706, 709 (5th Cir. 2002)). However, the good-faith exception does not apply when:

> (1) the magistrate issuing the warrant was misled by information in an affidavit that the affiant knew or should have known was false;
>
> (2) the issuing magistrate abandoned the judicial role;
>
> (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; or
>
> (4) the warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid.

*Id.* If the good-faith exception applies, a court grants the motion to suppress. *Id.* In doing so, the court need not reach the question of probable cause. *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1129 (5th Cir. 1997); *see also United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988) ("Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of the evidence under the good-faith exception of *Leon* will resolve the matter."). If, on the other hand, the good-faith exception does not apply, courts "proceed to the second step, ensuring that the magistrate issuing the warrant had a substantial basis for concluding that probable cause existed." *Sibley*, 448 F.3d at 757-58.

Guillory argues that the good-faith exception does not apply for the third (affidavit lacking in indicia of probable cause) and fourth (facially-deficient warrant) reasons quoted above. Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. ___, 138 S. Ct. 577, 586 (2018). Guillory argues that the warrant lacks probable cause because there are no articulable facts in the affidavit of special agent Williams indicating potential violations of 18 U.S.C. §§ 1510-1513 (obstruction of justice). The Court disagrees. The affidavit supporting the warrant explains that Guillory is charged with killing a federal witness to prevent, and in retaliation for, cooperation (18 U.S.C. §§ 1512-1513); that Guillory has a history of violence against other inmates; and that Guillory was in communication with other inmates about cooperating witnesses who were also imprisoned. These facts support the substantial chance that there could have been evidence in Guillory's cell pertinent to violations of § 1512 and § 1513. At a minimum, it cannot be said that the affidavit was so lacking in indicia of probable cause as to render belief in its existence unreasonable.

Guillory also argues that the affidavit is facially deficient because it does not explain alternative interpretations of Lebanks's letter to Guillory. An officer executing a search warrant may rely on it in good faith when it is supported by more than a bare-bones affidavit. *United States v. Robinson*, 741 F.3d 588, 597-98 (5th Cir. 2014). "A 'bare bones' affidavit contains 'wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause.'" *Id.* (quoting *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)). The affidavit in question includes specific facts regarding Guillory's history of violence in jail and a reasonable interpretation of the letter demonstrating that Guillory's cell may contain evidence of witness-intimidation crimes. Further, the letter was attached to Williams's affidavit and the magistrate judge could review it and make her own determination as to its meaning. The magistrate judge must "make a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Bird*, 31 F.3d 1329, 1340 (5th Cir. 1994); *see also United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004). In sum, the search warrant was supported by more than a bare-bones affidavit, and the magistrate judge used common sense in evaluating all of the facts and circumstances, including the letter itself, to determine the fair probability that evidence of a crime could be found in Guillory's cell. Therefore, Guillory's motion to suppress is denied.

Further, Guillory is not entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), because he has not made a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" that was necessary to the finding of probable cause.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Guillory's motion to suppress (R. Doc. 287) is DENIED.

New Orleans, Louisiana, this 18th day of March, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE