UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 16-32 |
| LOUIS AGE JR., *et al.* | SECTION M |

## ORDER & REASONS

Before the Court is a motion by defendants Louis Age Jr. ("Age Jr."), Louis Age III ("Age III"), Ronald Wilson Jr., Kendrick Johnson, and Stanton Guillory (collectively, "Defendants") to sever the trials in this matter.[1] The United States of America (the "Government") responds in opposition.[2] Also before the Court is a motion by defendant Age III to sever his trial from that of Age Jr.,[3] which the Government opposes.[4] Age Jr. replies to this opposition.[5] Considering the parties' memoranda, the record, and the applicable law, the Court denies the motions.

**I.   BACKGROUND**

On August 17, 2017, the grand jury in the United States District Court for the Eastern District of Louisiana returned a superseding indictment in this case charging the five Defendants with various counts arising from the July 27, 2012 murder of Milton Womack.[6] Womack was a co-defendant in a Medicare fraud case filed in the United States District Court for the Middle District of Louisiana, and styled *United States v. Louis T. Age, Jr., et al.*, Criminal Action No. 11-105. Womack was murdered two days after documents were filed in that case indicating that he

---

[1] R. Doc. 548.
[2] R. Doc. 553.
[3] R. Doc. 561.
[4] R. Doc. 573.
[5] R. Doc. 575.
[6] R. Doc. 52. Only Guillory was charged in the original indictment. R. Doc. 3.

was changing his plea to guilty. The Government's theory of this case is that the co-defendants here conspired to murder Womack in retaliation for his past cooperation in the Medicare fraud case and to prevent him from testifying at trial in that matter.

More specifically, the Government intends to prove, at least, the following set of facts: Johnson (Age Jr.'s former son-in-law) advised and encouraged Age Jr. to have Womack killed.[7] Age Jr. took that advice and had Age III (Age Jr.'s son) and Wilson, who were both involved in drug dealing and street life, to publicize among the members of a New Orleans gang that the Age family was willing to pay thousands of dollars for Womack's murder.[8] Age III and Wilson hired Guillory, a gang member who knew Womack was a witness in a federal case, to do the job.[9] Age III, Wilson, and Johnson conducted surveillance to locate Womack for Guillory.[10] Guillory murdered Womack on July 27, 2012.[11] Age Jr. gave Age III the money to pay for the hit.[12] Age III paid Guillory some, but not all, of that money.[13] Wilson approached Age Jr. when Age III failed to fully pay Guillory in an attempt to prevent a conflict with Guillory.[14]

To that end, Count 1 of the indictment charges Defendants with conspiring to commit murder for hire, in violation of 18 U.S.C. § 1958.[15] Count 2 charges Defendants with using a facility of interstate commerce (a cell phone) to commit murder for hire, in violation of 18 U.S.C. §§ 1958 and 2.[16] In Count 3, Defendants are charged with conspiring to murder Womack to prevent him from testifying in the Medicare fraud case, in violation of 18 U.S.C. §§ 1512(a)(3)(A)

---

[7] R. Doc. 553 at 2.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] R. Doc. 52 at 2.
[16] *Id.* at 2-3.

and 1512(k).[17]  Count 4 charges Defendants with killing Womack to prevent him from testifying in the Medicare fraud case, in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(3)(A), and 2.[18]  Count 5 charges Age Jr. and Age III with killing Womack to prevent him from communicating with law enforcement about his knowledge of the Medicare fraud scheme, in violation of 18 U.S.C. §§ 1512(a)(1)(C), 1512(a)(3)(A), and 2.[19]  In Count 6, Defendants are charged with conspiring to murder Womack in retaliation for his cooperation with law enforcement, in violation of 18 U.S.C. §§ 1513(a)(2)(A) and 1513(f).[20]  Count 7 charges Defendants with killing Womack in retaliation for his cooperation with law enforcement, in violation of 18 U.S.C. §§ 1513(a)(1)(B), 1513(a)(2)(A), and 2.[21]  Count 8 charges Johnson, Age Jr., and Age III with conspiring to use intimidation, threats, and corrupt persuasion to influence, delay, or prevent testimony in the Medicare fraud case and hindering, delaying, and preventing further communication with law enforcement relating to the commission or possible commission of a federal offense (healthcare fraud), all in violation of 18 U.S.C. § 1512(k).[22]  In Count 9, Johnson, Age Jr., and Age III are charged with conspiring to retaliate against a witness for aiding law enforcement in the Medicare fraud case, in violation of 18 U.S.C. § 1513(f).[23]  Count 10 charges Johnson with making false statements to the grand jury regarding Womack's murder, in violation of 18 U.S.C. § 1623.[24]  In Count 11, Age III is charged with making false statements to FBI agents in violation of 18 U.S.C. § 1001.[25]

---

[17] *Id.* at 3-4.
[18] *Id.* at 4-5.
[19] *Id.* at 5.
[20] *Id.* at 5-6.
[21] *Id.* at 6.
[22] *Id.* at 6-8.
[23] *Id.* at 8-9.
[24] *Id.* at 9-10.
[25] *Id.* at 10-11.

**II.    PENDING MOTION**

The Defendants essentially all seek separate trials.[26] All Defendants argue that Johnson should be tried separately due to his health issues.[27] It is undisputed that Johnson is a diabetic in end-stage renal failure who requires thrice-weekly dialysis to survive.[28] Johnson's current dialysis schedule is Monday, Wednesday, and Friday, leaving him available for trial on only Tuesday and Thursday.[29] Defendants argue that Johnson's limited availability will cause an already lengthy trial to become even longer, which will result in undue prejudice to all Defendants and the jurors.[30]

Defendants also seek severances based on the "spillover effect" of the potential admission of other crimes evidence under Rule 404(b) of the Federal Rules of Evidence.[31] All Defendants seek to be severed from Guillory due to the potential admission of evidence concerning other violent crimes he allegedly committed.[32] Guillory and Wilson seek to have their trials severed from those of Age Jr., Age III, and Johnson because of the potential admission of evidence concerning the Age family's participation in various fraud schemes.[33]

Further, Age III argues that his trial should be severed from that of Age Jr. because of the potential admission of Age Jr.'s statements to law enforcement that implicate Age III.[34] Age III contends that a joint trial would violate his confrontation clause rights by introducing incriminating testimony from a co-defendant who cannot be forced to testify.

---

[26] R. Docs. 548; 561.
[27] R. Doc. 548-1 at 4-12.
[28] R. Docs. 548-1 at 2-3; 553 at 10-11.
[29] R. Doc. 548-1 at 7.
[30] *Id.* at 4-12.
[31] *Id.* at 12-23.
[32] *Id.* at 14-18.
[33] *Id.* at 18-23.
[34] R. Doc. 561.

4

In opposition, the Government argues that no severance is warranted.[35] The Government posits generally that the law favors joint trials, especially in conspiracy cases.[36] More specifically, with respect to Johnson's limited availability, the Government argues that it is actively seeking accommodations to permit Johnson to attend trial on more than two days per week.[37] Further, the Government argues that, while a two-day-per-week trial is not ideal, it will not unduly prejudice Defendants or offer an unfair advantage to the Government.[38] As to the various requested severances based on the potential admission of Rule 404(b) evidence, the Government points out that this Court denied an earlier motion by Johnson to have his trial severed from that of Guillory due to the potential spillover effect, and that nothing has changed since that ruling.[39] The Government also argues that evidence concerning the Age family's prior involvement in the healthcare fraud scheme would be admitted at separate trials for Wilson and Guillory because that evidence is necessary to prove why Womack was killed, namely, that he was a federal witness.[40] Thus, there is no reason to sever the trials of Age Jr., Age III, and Johnson from those of Guillory and Wilson due to any potential spillover effect.[41] As to Age III's motion to sever his trial from that of Age Jr., the Government argues that the confrontation clause issue can be cured by appropriately redacting Age Jr.'s statement so that it does not inculpate Age III and giving a limiting instruction to the jury.[42] Age Jr. replies that such a redaction would prejudice him.[43]

---

[35] R. Doc. 553.
[36] *Id.* at 6-7.
[37] *Id.* at 10-11.
[38] *Id.* at 11-14.
[39] *Id.* at 8.
[40] *Id.* at 8-9.
[41] *Id.*
[42] R. Doc. 573.
[43] R. Doc. 575.

### III. LAW & ANALYSIS

Pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure, defendants may be charged together in one indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "There is a preference in the federal system for joint trials of defendants who are indicted together" because joint trials promote judicial efficiency and serve the interests of justice by avoiding the risk of inconsistent verdicts. *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209-10 (1987)). This is particularly true in conspiracy cases. *United States v. Ledezma-Cepeda*, 894 F.3d 686, 690 (5th Cir. 2018).

However, under Rule 14 "[i]f the joinder of offenses or defendants in an indictment … appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "Rule 14 does not require severance even if prejudice is shown." *Zafiro*, 506 U.S. at 538-39. Rather, "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Id*. at 541. "And, as a substantive matter, [the Fifth Circuit's] caselaw does not reflect a 'liberal attitude toward severance.'" *Ledezma-Cepeda*, 894 F.3d at 690 (quoting *United States v. McRae*, 702 F.3d 806, 822 (5th Cir. 2012)).

Severance under Rule 14 "is an *exception* warranted 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id.* (quoting *Zafiro*, 506 U.S. at 539) (emphasis in original; citation omitted). To overcome the presumption in favor of joinder, a defendant must demonstrate that: (1) a joint trial would prejudice him to such an extent that the district court could not provide adequate protection through a limiting instruction; and (2) the

6

prejudice would outweigh the government's interest in judicial economy. *Id.* "Generic allegations of prejudice" are insufficient because "neither a quantitative disparity in the evidence nor the presence of a spillover effect requires severance." *Id.* (quotation omitted). Moreover, in conspiracy cases, courts "generally favor specific instructions over severance … because it is generally presumed that juries follow the instructions given to them by the district court and are capable of compartmentalizing the evidence against each defendant." *Id.* (internal quotation marks, alterations, and footnotes omitted).

### A. Johnson's Medical Condition

All Defendants argue that Johnson's trial should be severed due to his dialysis schedule which leaves him available for trial on only Tuesdays and Thursdays.[44] The question of whether a criminal defendant's trial should be severed due to physical incapacity is reserved to the trial court's discretion. *United States v. Saltzman*, 153 F. Supp. 3d 245, 250 (D.D.C. 2016) (collecting cases). In weighing the question, the district court must balance the public's interest in resolving criminal cases against considerations of how the defendant's health might impair his ability to participate in his defense and whether the trial is likely to pose risks to his health or worsen his condition. *Id.* The factors courts have considered in this analysis include: "(1) the medical evidence; (2) the defendant's activities at work or play; (3) the possibility of measures to minimize the risk to defendant's health in subjecting him to a trial; (4) the temporary or permanent character of the physical problem; and (5) the magnitude and seriousness, that is, the public's interest in prosecuting the case." *United States v. Gunter*, 2013 WL 5942341, at *1 (E.D. Pa. Nov. 5, 2013) (citing *United States v. Doran*, 328 F. Supp. 1261 (S.D.N.Y. 1971)).

---

[44] R. Doc. 548-1 at 4-12.

Johnson's medical condition – end-stage renal failure requiring dialysis – is undisputedly permanent and his activities in jail are limited to those of a sedentary nature. Both the Defendants and the Government agree that any trial involving Johnson would have to be conducted in such a manner as to accommodate his treatment and overall medical condition. While these factors seem to favor severance, they are actually neutral because Defendants are not arguing that Johnson can never be tried, just that he should be tried separately. *Compare United States v. Duke*, 2018 WL 5266852, at *5 (W.D.N.C. Oct. 23, 2018) (denying motion to sever on grounds of defendant's serious medical condition requiring dialysis where defendant did not seek a finding that he was physically incompetent to stand trial), *and United States v. DeNunzio*, 174 F. Supp. 3d 582, 583-84 (D. Mass. 2016) (denying motion to sever on grounds defendant was physically incompetent to stand trial because trial would not "pose a substantial danger to a defendant's life or health," and "[t]he mere possibility of an adverse effect on a party's wellbeing is not enough to warrant a postponement") (quoting *United States v. Zannino*, 895 F.2d 1, 14 (1st Cir. 1990)), *with Gunter*, 2013 WL 5942341, at *2 (severing defendant from trial upon finding he was physically incompetent to stand trial). Johnson's health condition would have to be accommodated in a trial, whether joint or separate. Moreover, any separate trial would include much of the same evidence as a joint trial and likely would not involve substantially fewer trial days. Thus, Johnson faces the same discomforts of a trial either way.

The crux of the Defendants' motion is prejudice. Defendants argue that the proposed two-day-per-week trial schedule is unduly prejudicial to them because the Government would have more time to regroup and prepare between trial days, whereas their attorneys will not be paid to work during these intervals. They also argue that the jury would be subjected to a longer trial

8

which could narrow the jury pool, increase the risk of COVID-19, and cause jurors to forget evidence and limiting instructions.

Defendants' arguments regarding prejudice are unpersuasive. First, at this point, it is unknown whether a trial with Johnson will be limited to two days per week. The Government is actively seeking solutions to accommodate Johnson's dialysis treatment in a manner that would allow for more time in trial. Second, other than supposing that the Government would benefit from the proposed trial schedule and that the jury would be inconvenienced, Defendants do not offer any legal precedent holding that such a schedule is so fundamentally unfair to them as to require severance. Moreover, the citizens of the district and the Government would be prejudiced by severance because the trial would have to be conducted twice. More people would have to serve as jurors and it would waste judicial resources. A separate trial for Johnson, if severed, may take the ten weeks now contemplated by the joint trial, presenting all the same risks associated with a longer trial. Further, the citizens of the district have an interest in bringing this case to a swifter conclusion than would occur if two, separate trials were conducted, as well as an interest in avoiding the cost and inconvenience of multiple trials involving much of the same evidence and witnesses.

Finally, the public interest is not limited to bringing this case to a swifter end or avoiding costs and inconvenience. The seriousness of the offense – the successful hired killing of a federal witness – weighs heavily against severance. *See Saltzman*, 153 F. Supp. 3d at 252-53 (collecting cases).

Accordingly, the Defendants' motion to sever Johnson's trial is denied.

**B. Rule 404(b) Evidence**

Age Jr., Age III, Wilson, and Johnson move to sever their trials from that of Guillory arguing that evidence concerning Guillory's gang-related activities, including murders in which he was involved, will cause prejudicial spillover.[45] Defendants are particularly concerned with evidence of Guillory's involvement in a shooting at a birthday party that resulted in the unintended deaths of a six-year-old girl and a mother of three.[46]

This Court denied Johnson's prior motion seeking to sever his trial from Guillory's due to such Rule 404(b) evidence.[47] Nothing has changed. In ruling on the prior motion, this Court held that the case at bar is analogous to *United States v. Ledezma-Cepeda*, a murder-for-hire case where the Fifth Circuit found that severing the alleged hitman's trial was not warranted when all of the co-defendants "were charged *together*, for the very *same crime*, committed at the *same time*." 894 F.3d at 692 (emphasis in original). In that case, the Rule 404(b) evidence against the alleged hitman included evidence linking him to at least nine additional murders in five years and showing that he was tracking two other persons for the drug cartel at the time of his arrest. *Id.* at 689. The district court denied successive motions to sever, but instructed the jury that the Rule 404(b) evidence "only can be used for determining motive, intent, that sort of thing, of the person about whom it's being spoken" and "in this case, that would be [the alleged hitman]." *Id.* On appeal, the Fifth Circuit held that severance was not warranted because there was no temporal distinction between the co-defendants' involvement in the conspiracy. *Id.* at 691-92. Instead, they were charged with committing the same crime at the same time. *Id.* The appellate court noted that the argument of "general 'spillover' concerns [is] precisely the type of codefendant evidence that [the

---

[45] *Id.* at 12-18.
[46] *Id.* at 17.
[47] R. Doc. 354.

court] presume[s] limiting instructions can cure." *Id.* at 692.  Further, the court noted that the district court did not abuse its discretion by denying the multiple motions to sever because it "ably parsed the evidence and instructed the jury many times to consider certain evidence only against [the alleged hitman] and only for limited purposes." *Id.* (internal quotation marks and alterations omitted).

The same is true in this case.  Defendants argue that evidence of Guillory's gang activities, particularly his involvement in other murders, is so inflammatory that a limiting instruction would be inadequate to protect them against prejudicial spillover and ensure their right to a fair trial.[48] This general spillover argument does not satisfy the Defendants' burden to overcome the presumption for joint trials of co-defendants who are indicted together, for the *same crime*, committed at the *same time*.  Defendants have not met their heavy burden of showing specific and compelling prejudice they will suffer from a joint trial with Guillory.  To the extent the Government introduces Rule 404(b) evidence against Guillory, this Court will issue an appropriate limiting instruction with respect to such evidence.  As such, Age Jr., Age III, Wilson, and Johnson's motion to sever their trials from that of Guillory is denied.

Guillory and Wilson's motion to sever their trials from those of Age Jr., Age III, and Johnson due to the "spillover effect" of potential Rule 404(b) evidence fares no better.  Guillory and Wilson argue that their trials must be severed from those of Age Jr., Age III, and Johnson because the Government seeks to introduce against those three defendants Rule 404(b) evidence related to the Medicare fraud case and other insurance frauds in which they participated.[49]  Wilson and Guillory argue that they did not participate in those other crimes and that such evidence would

---

[48] R. Doc. 548-1 at 17.
[49] *Id.* at 18-23.

be unduly prejudicial to them.[50]  This argument is unpersuasive.  Evidence regarding the Medicare fraud trial is central to this case because the Government's theory is that Defendants conspired to murder Womack to prevent him from testifying in the Medicare fraud case.  To the extent the Government introduces Rule 404(b) evidence against Age Jr., Age III, and Johnson that is not admissible against Wilson or Guillory, this Court will issue an appropriate limiting instruction with respect to such evidence.  Hence, Wilson and Guillory's motion to sever their trials from that of Age Jr., Age III, and Johnson is denied.

### C. Confrontation Clause

Age III argues for severance because Age Jr.'s statement to law enforcement may inculpate him.[51]  Specifically, when case agent William "Chuck" Williams expressed his belief to Age Jr. that he paid his son, Age III, to have someone kill Womack and it got messed up, Age Jr. shook his head in the affirmative and said something to the effect: "You may be right.  I may spend the rest of my life in jail, but more will come to light."[52]

In *Bruton v. United States*, 391 U.S. 123, 124 (1968), the Supreme Court held that it violates the Sixth Amendment's confrontation clause to admit against one defendant a confession accusing a co-defendant of a crime, when the declarant will not testify and thus cannot be cross-examined. However, the Supreme Court later held "that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when … the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson,* 481 U.S. at 211.

---

[50] *Id.*
[51] The statement is the subject of a motion to suppress.  R. Doc. 284.
[52] R. Doc. 573 at 1-2.

Relying on *Richardson*, the Government argues that Age Jr.'s statement, if it is not suppressed, can be redacted accordingly, and the Court can give a proper limiting instruction. The Government proposes that Williams can testify that he asked Age Jr. if he paid an "intermediary" or "someone" to have Womack killed.[53] The Court agrees that this solution would obviate the need for separate trials. However, Age Jr. objects to the proposed redaction, arguing that it will "distort the meaning of the alleged statement" by removing the contextual – and, according to Age Jr., "especially ridiculous" – reference to his son, Age III.[54] If the Court allows the statement to be introduced, it will allow the redaction and Age Jr. may seek to elicit the countervailing testimony of agent Williams concerning a separate statement Age Jr. is said to have made rejecting the notion that he paid Age III (though likewise redacted to "intermediary" or "someone") to arrange the murder. In this way, the *Richardson* solution balances the concerns of Age III, Age Jr., and the Government.

Therefore, Age III's motion to sever his trial from that of Age Jr. is denied.

## IV.   CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that Defendants' joint omnibus motion to sever (R. Doc. 548) is DENIED.

IT IS FURTHER ORDERED that Age III's motion to sever his trial from that of Age Jr. (R. Doc. 561) is DENIED.

New Orleans, Louisiana, this 16th day of December, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[53] *Id.* at 4.
[54] R. Doc. 575 at 2.