UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                         CRIMINAL ACTION

VERSUS                                           NO. 16-32

LOUIS AGE JR., *et al*.                          SECTION M (1)

## ORDER & REASONS

On August 4, 2020, the United States of America (the "Government") filed a notice of intent to introduce evidence of intrinsic acts or, in the alternative, extrinsic acts pursuant to Rule 404(b) of the Federal Rules of Evidence.[1]  The Government supplemented its notice with a seven-page letter dated March 19, 2021.[2]  Before the Court is a motion filed in response to the Government's notice by defendants Louis Age Jr., Louis Age III, Ronald Wilson, Jr., Kendrick Johnson, and Stanton Guillory (collectively, "Defendants") seeking to prohibit the Government from offering at trial certain evidence described in the Government's notice (as supplemented).[3]  The Government responds in opposition,[4] and the parties filed various supplemental memoranda and replies.[5]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

## I.    BACKGROUND

On August 17, 2017, the grand jury in the United States District Court for the Eastern District of Louisiana returned a superseding indictment charging Defendants with various counts

---

[1] R. Doc. 433.

[2] R. Doc. 560-2.  The letter came in response to the defendants' request for discovery.  R. Doc. 560-1.

[3] R. Doc. 560.

[4] R. Doc. 574.

[5] R. Docs. 569 (Guillory's supplemental memorandum in support of Defendants' motion to prohibit); 577 (Guillory's second supplemental memorandum in support of Defendants' motion to prohibit); 581 (the Government's opposition to Defendants' motion for leave to file a reply); 583 (Defendants' reply in support of their motion to prohibit).

arising from the July 27, 2012 murder of Milton Womack.[6]  Womack had been a co-defendant with Age Jr., Ayanna Age ("Ayanna," who is Age Jr.'s daughter, Age III's sister, and Johnson's ex-wife), and others in a Medicare fraud case in the United States District Court for the Middle District of Louisiana, styled *United States v. Louis T. Age, Jr., et al.*, Criminal Action No. 11-105. Womack was murdered two days after documents were filed in that case indicating he was changing his plea to guilty.  The Government's theory in the instant case is twofold: (1) that Defendants conspired to murder Womack in retaliation for his past cooperation in the Medicare fraud case and to prevent him from testifying at trial in that matter; and (2) that Defendants conspired to prevent Ayanna from cooperating or testifying in the Medicare fraud case and retaliated against her when she did.[7]

More specifically, the Government intends to prove at least the following set of facts: Johnson (Age Jr.'s former son-in-law) advised and encouraged Age Jr. to have Womack killed.[8] Age Jr. took that advice and had Age III (Age Jr.'s son) and Wilson, who were both involved in drug dealing and street life, publicize among the members of a New Orleans gang that the Age family was willing to pay thousands of dollars for Womack's murder.[9]  Age III and Wilson hired Guillory, a gang member who knew that Womack was a witness in a federal case, to do the job.[10] Age III, Wilson, and Johnson conducted surveillance to locate Womack for Guillory.[11]  Guillory murdered Womack on July 27, 2012.[12]  Then, once Womack was silenced, Defendants conspired to prevent the next potential cooperator, Ayanna, from testifying at trial in the Medicare fraud

---

[6] R. Doc. 52.  Only Guillory was charged in the original indictment.  R. Doc. 3.
[7] R. Doc. 433.
[8] R. Doc. 553 at 2.
[9] *Id.*
[10] R. Doc. 433 at 6.
[11] *Id.*
[12] R. Doc. 52.

action.[13]   Defendants demanded Ayanna's family loyalty, bribed, threatened, and extorted her, attempted to have her prosecuted, and then, when all else failed, alienated and repudiated her by forcing her and her children to leave the family home, which left her homeless and without assets.[14]

The grand jury in this case returned an 11-count superseding indictment.[15]   Count 1 charges Defendants with conspiring to commit murder for hire, in violation of 18 U.S.C. § 1958.[16]   Count 2 charges Defendants with using a facility of interstate commerce (a cell phone) to commit murder for hire, in violation of 18 U.S.C. §§ 1958 and 2.[17]   Count 3 charges Defendants with conspiring to murder Womack to prevent him from testifying in the Medicare fraud case, in violation of 18 U.S.C. §§ 1512(a)(3)(A) and 1512(k).[18]   Count 4 charges Defendants with killing Womack to prevent him from testifying in the Medicare fraud case, in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(3)(A), and 2.[19]   Count 5 charges Age Jr. and Age III with killing Womack to prevent him from communicating with law enforcement about his knowledge of the Medicare fraud scheme, in violation of 18 U.S.C. §§ 1512(a)(1)(C), 1512(a)(3)(A), and 2.[20]   Count 6 charges Defendants with conspiring to murder Womack in retaliation for his cooperation with law enforcement, in violation of 18 U.S.C. §§ 1513(a)(2)(A) and 1513(f).[21]   Count 7 charges Defendants with killing Womack in retaliation for his cooperation with law enforcement, in violation of 18 U.S.C. §§ 1513(a)(1)(B), 1513(a)(2)(A), and 2.[22]   Count 8 charges Johnson, Age Jr., and Age III with conspiring to use intimidation, threats, and corrupt persuasion to influence, delay, or prevent

---

[13] R. Doc. 433 at 6.
[14] *Id.*
[15] R. Doc. 52.
[16] *Id.* at 2.
[17] *Id.* at 2-3.
[18] *Id.* at 3-4.
[19] *Id.* at 4-5.
[20] *Id.* at 5.
[21] *Id.* at 5-6.
[22] *Id.* at 6.

testimony in the Medicare fraud case and hindering, delaying, and preventing further communication with law enforcement relating to the commission or possible commission of a federal offense (healthcare fraud), all in violation of 18 U.S.C. § 1512(k).[23]   Count 9 charges Johnson, Age Jr., and Age III with conspiring to retaliate against a witness for aiding law enforcement in the Medicare fraud case, in violation of 18 U.S.C. § 1513(f).[24]   Count 10 charges Johnson with making false statements to the grand jury regarding Womack's murder, in violation of 18 U.S.C. § 1623.[25]   Finally, Count 11 charges Age III with making false statements to FBI agents, in violation of 18 U.S.C. § 1001.[26]

As detailed in its notice, the Government seeks to introduce evidence intrinsic to the crimes charged in the superseding indictment or, in the alternative, evidence of extrinsic acts pursuant to Rule 404(b).[27]   Specifically, the Government seeks to introduce evidence of 28 "other acts," including: (1) insurance-fraud schemes occurring prior to 2005; (2) arson relating to buildings owned by Age Jr.; (3) Womack's involvement in the arson of the buildings owned by Age Jr.; (4) the Medicare fraud; (5) a life-insurance scheme involving Ayanna's ex-husband, Ron Alvarez; (6) staged accidents and "bogus" insurance claims; (7) Guillory's leadership role and participation in a shootout with a rival gang which occurred shortly before he was hired to murder Womack; (8) Guillory's participation as a gang member in a murder of a rival-gang member prior to Womack's murder; (9) Age III's association with Ronald Wilson, III ("Ronu," who is defendant Wilson's son) when they were shot at by adversaries; (10) a July 2012 shootout wherein Guillory fired the same gun he used to kill Womack less than three weeks later; (11) Guillory's crash of the red

---

[23] *Id*. at 6-8.
[24] *Id*. at 8-9.
[25] *Id*. at 9-10.
[26] *Id*. at 10-11.
[27] R. Docs. 433; 560-2.

Monte Carlo he drove when he murdered Womack; (12) Guillory's efforts to hide the murder weapon after killing Womack and its ultimate transfer to minor and co-conspirator Raheem Jackson; (13) Guillory's shanking a potential adverse witness while incarcerated; (14) Guillory's "continued reign of violence at several prison facilities"; (15) Guillory's retaliation against a Plaquemine Detention Center inmate; (16) Age III's financial motive to have the trial in the Medicare fraud case disrupted; (17) the use of Age Jr.'s company, Houses R Us, as a conduit to obtain cash provided to Womack as "hush" money, and to further an insurance-fraud scheme; (18) Age III and Wilson's surveillance of the residence of Womack's girlfriend; (19) Age Jr., Age III, and Johnson's attempts to prevent Ayanna from cooperating against them in the Medicare fraud case; (20) Age Jr., Age III, and Johnson's attempts to have Ayanna prosecuted; (21) Age Jr., Age III, and Johnson's attempts to leave Ayanna and her children homeless and without assets; (22) Guillory's shootings of Breanna Allen, Shawna Pierce, Jonathan Lewis, and a rival-gang member; (23) Guillory's "active involvement in unleashing violence including murder on rival-gang members" in 2012; (24) Guillory's role in attempting to silence a Government witness while incarcerated; (25) Wilson's connection to violent street-gang members; (26) Age III and Wilson's hiring of Guillory to assassinate Womack; (27) Age III and Wilson's criminal associations with gang members and Age III, Wilson, and Johnson's involvement in narcotics activities; and (28) Guillory's acts of violence in general.[28]   The Government classifies each of these acts as either intrinsic or extrinsic.[29]

## II.    PENDING MOTION

In their motion to prohibit introduction of the evidence disclosed in the Government's notice, Defendants contend that (1) the Government mischaracterizes nearly all of the evidence as

---

[28] R. Doc. 560-2 at 2-6.

[29] *Id.*

intrinsic to avoid having to satisfy the requirements of Rules 404(b) and 403;[30] and (2) the Government's notice does not provide a proper basis under Rule 404(b) for admitting evidence regarding most of the acts identified as extrinsic.[31]   So, say Defendants, this Court should first classify the acts detailed in the notice as either intrinsic or extrinsic, and then either exclude evidence of them due to the Government's failure to satisfy Rules 404(b) and 403 or hold a hearing outside the presence of the jury to determine whether the evidence is admissible under Rules 404(b) and 403.[32]

In support of Defendants' motion, Guillory argues separately that most of the gang-related acts are extrinsic to the crimes charged in the superseding indictment.[33]   He admits, however, that the acts that occurred near the time of Womack's killing are admissible because they serve a purpose permitted under Rule 404(b).[34]   In addition, Guillory takes issue with the Government's characterization of him as "the perfect gang assassin."[35]   He argues that the Government failed to produce evidence showing he was sought out as an assassin because of his reputation when, instead, he was sought out solely because he was young and foolish.[36]   Guillory contends that evidence of his past violent acts must be excluded[37] because such evidence may cause the jury to convict him "not for the offense charged but for the extrinsic offense."[38]   Accordingly, argues Guillory, Defendants' motion to prohibit certain evidence should be granted.[39]

---

[30] R. Doc. 560-3 at 2.
[31] *Id*. at 11
[32] *Id*. at 12.
[33] R. Doc. 569 at 2.
[34] *Id*.
[35] R. Doc. 577 at 2.
[36] *Id*. at 1-2.
[37] *Id*. at 4.
[38] *Id*. at 3 (quoting *United States v. Beechum*, 582 F.2d 898, 914 (5th Cir. 1978)).
[39] *Id*. at 4.

In opposition, the Government argues that evidence of the 28 acts it lists is admissible and necessary to prove the crimes charged in the indictment as they show, among other things, that Defendants' actions "were motivated by a specific purpose to silence Womack and Ayanna, prevent them from sharing their knowledge of the [D]efendants' criminal activities with law enforcement, and to retaliate against them for providing that information."[40]   The Government argues further that in order for the jury to evaluate all of the circumstances under which Defendants sought to prevent and retaliate against possible cooperators in the Medicare fraud case, "the jury must hear evidence of what crimes [D]efendants had committed, were known by the victims, and that [D]efendants feared would be revealed if and when Womack and Ayanna cooperated with the authorities."[41]   Accordingly, the Government maintains that the evidence of the 28 listed acts is admissible.[42]

In their reply, Defendants argue that because the Government's descriptions of, and reasons for admitting, the acts "change and evolve" with each of its filings, the Court should (1) find the Government's original notice to be insufficient; (2) require the Government to provide a new notice "articulating precisely what evidence it seeks to introduce under Rule 404(b) and the reasons why such evidence is admissible"; (3) hold a hearing outside the presence of the jury to determine the admissibility of such evidence before it is presented at trial; and (4) at the conclusion of that hearing, rule that the Government's proffered evidence is inadmissible under Rules 404(b) and 403.[43]   In addition, Defendants argue that because the superseding indictment does not include allegations of many of the acts the Government lists, evidence of these acts must be excluded.[44]

---

[40] R. Doc. 574 at 2.
[41] *Id*. at 4-5.
[42] *Id*. at 11.
[43] R. Doc. 583 at 1-2.
[44] *Id*. at 4.

According to Defendants, the Government "does not even attempt to offer a valid Rule 404(b) reason for proposed evidence[]" and "continues to misconstrue and misunderstand the term 'knowledge' as it is used in Rule 404(b)."[45]   Finally, Defendants contend that, because the Government has not provided any evidence to prove the listed acts concerning life-insurance fraud, auto-insurance fraud, and drug dealing,[46] it apparently intends to develop such evidence through Ayanna's testimony, which will lead to extreme and unfair prejudice against them and, as such, it should be excluded.[47]

## III.   LAW & ANALYSIS

### A.   Admissibility of Intrinsic or Extrinsic Evidence

Rule 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  In other words, "other-acts evidence is not admissible to prove a person possessed a particular character or character trait," *United States v. Robert*, 2021 WL 4484983, at *2 (5th Cir. Sept. 30, 2021), or "to show that the defendant 'is by propensity a probable perpetrator of the crime' charged."  *United States v. Williams*, 708 F. App'x 826, 829 (5th Cir. 2017) (quoting *Old Chief v. United States*, 519 U.S. 172, 181 (1997)). "Admissibility [of other-acts evidence] turns, *inter alia*, on whether the evidence is intrinsic or extrinsic."  *Robert*, 2021 WL 4484983, at *2 (citing *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010)).

Evidence is intrinsic, and therefore not limited by Rule 404(b), if the "evidence of another act and the crime charged are 'inextricably intertwined,' both are part of a 'single criminal

---

[45] *Id*. at 5.
[46] *Id*. at 6 (nos. 5, 6, and 27, respectively, of the acts listed in the Government's notice, as supplemented).
[47] *Id*. at 7.

episode,' or the prior act was a 'necessary preliminary' of the crime charged." *Williams*, 708 F. App'x at 829 (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)) (alteration omitted).  In addition, "'intrinsic evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place, and to evaluate all of the circumstances under which the defendant acted.'" *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 967 (5th Cir. 2019) (quoting *Rice*, 607 F.3d at 141) (internal quotations marks and alteration omitted).

"When a conspiracy is alleged," as here, "the Fifth Circuit gives somewhat greater latitude in characterizing evidence as intrinsic." *United States v. Porter*, 2013 WL 5673607, at *5 (E.D. La. Oct. 17, 2013) (citing *United States v. Girod*, 646 F.3d 304, 320 (5th Cir. 2011)).  "It is well established that where a conspiracy is charged, acts that are not alleged in the indictment may be admissible as part of the Government's proof." *United States v. Watkins*, 591 F.3d 780, 785 (5th Cir. 2009).  "Evidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy came about, how it was structured, and how the [defendant] became a member." *Id.* at 784 (citing *United States v. Nichols*, 750 F.2d 1260, 1265 (5th Cir. 1985)).  Moreover, "evidence of acts committed pursuant to a conspiracy and offered to prove the defendant's membership or participation in the conspiracy [is] not extrinsic evidence"; instead, "[a]cts committed in furtherance of the conspiracy are themselves part of the act charged." *United States v. Garcia Abrego*, 141 F.3d 142, 175 (5th Cir. 1998)).  "Thus, evidence of such acts constitutes intrinsic evidence – that is, direct evidence of the charged conspiracy itself." *Id.*

Extrinsic other-act evidence is admissible if it satisfies the two-prong test set forth in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc).  First, a court determines whether the evidence "is relevant to an issue other than the defendant's character," such as motive,

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *Id.* at 911.  Second, a court must determine whether the evidence has a "probative value that is not substantially outweighed by its undue prejudice and ... meet[s] the other requirements of rule 403." *Id.*

The relevance of extrinsic offense evidence is determined by Rule 401 of the Federal Rules of Evidence, which provides that evidence is relevant "if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Porter*, 2013 WL 5673607, at *3 (quoting *Beechum*, 582 F.2d at 911).  Whether an extrinsic act is relevant "is a function of its similarity to the offense charged."  *Beechum*, 582 F.2d at 911.  "[S]imilarity must be determined with respect to the particular issue to which the extrinsic offense is addressed."  *Porter*, 2013 WL 5673607, at *3 (citing *Beechum*, 582 F.2d at 911).  "[S]imilar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor."  *Huddleston v. United States*, 485 U.S. 681, 689 (1988) (citing *Beechum*, 582 F.2d at 912-13).  Showing "'some evidence that the defendant committed the bad act'" satisfies this standard.  *United States v. Pizarro*, 2017 WL 3390247, at *2 (E.D. La. Aug. 7, 2017) (quoting *United States v. Crawley*, 533 F.3d 349, 354 (5th Cir. 2008)).  "It is not enough for the Government to merely identify a valid non-propensity purpose under Rule 404(b)(2)"; instead, it must show that the proffered evidence is relevant to that purpose. *United States v. Crinel*, 2017 WL 490635, at *3 (E.D. La. Feb. 7, 2017) (quoting *United States v. Brown*, 765 F.3d 278, 292 (3d Cir. 2014)).  The Government "'must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed the proffered prior offense, he therefore is more likely to have committed the charge[d] offense." *Id.* (quoting *Brown*, 765 F.3d at 292-93).

A court is not required to make a preliminary finding that an extrinsic act occurred when deciding its relevance. *Huddleston*, 485 U.S. at 688-89.  A court "has broad discretion to control the order of proof at trial and may allow the Government to introduce evidence concerning a similar act subject to a later assessment of whether sufficient evidence has been offered to permit the jury to make the requisite finding." *Porter*, 2013 WL 5673607 at *4 (citing *Huddleston*, 485 U.S. at 690, and Fed. R. Evid. 104(b)).  If the Government fails to meet this "minimal standard of proof," then a court must instruct the jury to disregard the extrinsic evidence that the Government conditionally admitted. *Id.* (quoting *Huddleston*, 485 U.S. at 690).

In a conspiracy case, a defendant's entry of a plea of not guilty satisfies the first prong of the *Beechum* test because the plea "'raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence.'" *United States v. Jimenez-Elvirez*, 862 F.3d 527, 536 (5th Cir. 2017) (quoting *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996)); *see also United States v. Booker*, 334 F.3d 406, 411 (5th Cir. 2003) ("The mere entry of a not guilty plea in a conspiracy case raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence.").  "In other words, where the prior offense involved the same intent required to prove the charged offense, that prior offense is relevant and [the court is] required only to consider whether the requirements of Rule 403 are met under *Beechum*'s second prong." *United States v. Cockrell*, 587 F.3d 674, 679 (5th Cir. 2009).

Under *Beechum*'s second prong, to determine whether the extrinsic evidence possesses probative value that is not substantially outweighed by its undue prejudice and meets the other requirements of Rule 403, a court conducts a "commonsense assessment of all the circumstances surrounding the extrinsic offense." 582 F.2d at 914.  In addition, a court must consider the availability of other means of proof of the charged crimes and balance the "incremental probity"

of the extrinsic evidence against its potential for undue prejudice. *Id.* In evaluating the likelihood of undue prejudice, courts must consider whether the extrinsic other act is "of a heinous nature" as would "incite the jury to irrational decision by its force on human emotion." *Id.* at 917; *see also United States v. Berreles*, 783 F. App'x 453, 455 (5th Cir. 2019). "The probative value of extrinsic evidence is not an absolute, but must be determined with regard to various factors, such as the extent to which the defendant's unlawful intent is established by other evidence, the overall similarity of the extrinsic and charged offenses, and the amount of time that separates the extrinsic and charged offenses." *United States v. Pea*, 2021 WL 1566943, at *3 (W.D. La. Apr. 21, 2021); *see also United States v. Adair*, 436 F.3d 520, 526 (5th Cir. 2006) (listing same factors); *Crinel*, 2017 WL 490635, at *3 (same). The probative value of extrinsic evidence "correlates positively" with its likeness to the crimes charged. *Beechum*, 582 F.2d at 915. If the extrinsic evidence and the crimes charged "are dissimilar in most respects, 'the extrinsic offense may have little probative value to counterbalance the inherent prejudice of this type of evidence.'" *Porter*, 2013 WL 5673607, at *4 (quoting *Beechum*, 582 F.2d at 915). Temporal remoteness is not a bar under Rule 404(b), but it "depreciates the probity of the extrinsic offense." *Beechum*, 582 F.2d at 915. "Limiting instructions can 'greatly minimize any risk of undue prejudice posed by the admission of extrinsic evidence.'" *Robert*, 2021 WL 4484983, at *3 (quoting *United States v. Garcia Mendoza*, 587 F.3d 682, 689 (5th Cir. 2009)).

### B. Analysis

Defendants object to all but six of the 28 "other acts" that the Government seeks to establish as either intrinsic or extrinsic acts.[48] The Court addresses each disputed classification in turn.

---

[48] The 28 acts (which are listed on pages 4-5, *supra*) will be referred to individually herein as "Act [number of the act in the list]." Defendants agree that Act 5 (a life-insurance scheme involving Ayanna's ex-husband, Ron Alvarez) is properly classified as extrinsic evidence; however, the parties disagree as to whether such evidence is admissible. R. Doc. 560 at 4-5. Defendants concede that the following acts are admissible as intrinsic evidence: Act

### 1.   Act 1 (insurance-fraud schemes occurring prior to 2005)

The Government argues that evidence of Age Jr. and Age III's involvement in pre-2005 insurance-fraud schemes is intrinsic.  It contends that evidence of the schemes is relevant to prove Age Jr. and Age III's reasons for preventing Ayanna, who knew of and participated in some of these schemes, from testifying in the Medicare fraud case.[49]  Therefore, says the Government, the schemes are inextricably intertwined with the charged crimes.  Further, the Government contends that the Act 1 evidence is intrinsic because Defendants' earlier conspiratorial roles in the insurance-fraud schemes are the same as their roles in the conspiracies charged here.[50]

Defendants disagree.  They declare, without any analysis, that evidence of the pre-2005 insurance-fraud schemes is not inextricably intertwined with the charged crimes and that this evidence, which may provide evidence of motive, is "quintessential" Rule 404(b) extrinsic evidence.[51]  Even though Defendants concede that this evidence may be extrinsic evidence, they cite no caselaw detailing that evidence of motive cannot be characterized as intrinsic but must always be subject to the limitations of Rule 404(b).[52]

Evidence of the pre-2005 insurance schemes is intrinsic.  Defendants feared that if and when Ayanna cooperated with law enforcement in the Medicare fraud case, she could subject them to years of incarceration by revealing their previous criminal activity, including the insurance-

---

18 (Age III and Wilson's surveillance of the residence of Womack's girlfriend); Act 19 (Age Jr., Age III, and Johnson's attempts to prevent Ayanna from cooperating against them in the Medicare fraud case); Act 20 (Age Jr., Age III, and Johnson's attempts to have Ayanna prosecuted); Act 21 (Age Jr., Age III, and Johnson's attempts to leave Ayanna and her children homeless and without assets); and Act 26 (Age III and Wilson's hiring of Guillory to assassinate Womack).  R. Doc. 560-3 at 7 n.2.

[49] R. Docs. 433 at 1-2; 560-2 at 2.

[50] R. Doc. 560-2 at 2.

[51] R. Doc. 560-3 at 7.

[52] *See id.*; *see also* R. Doc. 574 at 5 (observing that "the defendants do not cite a case in which a court ruled that motive evidence, which is a permissible basis for admission under Rule 404(b), must be extrinsic when motive was an element of the offense").

fraud schemes.[53]  Put another way, at the root of the conspiracy to silence Ayanna is Defendants' fear that she could expose their pre-2005 insurance-fraud crimes: so, to prevent these crimes from being exposed, Defendants sought to obstruct Ayanna's testimony by attempting to bribe, threaten, control, and alienate her.  The insurance-fraud schemes, then, complete the story of the crime charged, evidence the circumstances under which Defendants acted to silence Ayanna, establish how the conspiracy came about, and provide context for Defendants' actions as alleged in the superseding indictment.  *See, e.g., Watkins*, 591 F.3d at 784 (holding that evidence is intrinsic to a conspiracy if relevant to establishing how the conspiracy came about); *see also* R. Doc. 433 at 7 (observing that "what these defendants believed Womack and Ayanna could expose is critical to understanding why the defendants would unleash such an extraordinary display of corruption and violence in what at first blush appeared to have been a 'white collar' health-care-fraud prosecution").  Further, the schemes evince the context and Defendants' modus operandi for silencing perceived threats like Ayanna and Womack.  Accordingly, evidence of the pre-2005 insurance-fraud schemes is properly classified as intrinsic and thus admissible.

### 2. Act 2 (arson relating to buildings owned by Age Jr.) and Act 3 (Womack's involvement in the arson of the buildings owned by Age Jr.)

The Government argues that evidence of the arson relating to the buildings owned by Age Jr. (Act 2) and Womack's involvement in said arson (Act 3) is intrinsic to the charged offenses because (1) the arson is directly referenced in the indictment; and (2) it relates to Defendants' conspiracies and motives to keep Womack and Ayanna from testifying in the Medicare fraud case.[54]  Defendants, on the other hand, argue that this evidence is properly classified as extrinsic.[55]  Again, Defendants merely assert in conclusory fashion that evidence of this arson is not

---

[53] R. Docs. 433 at 8; 574 at 5.
[54] R. Doc. 560-2 at 2.
[55] R. Doc. 560-3 at 7.

inextricably intertwined with the charged crimes and that this evidence, which may evince motive, is "quintessential" Rule 404(b) extrinsic evidence.[56]  And again, even though Defendants concede that this evidence may be extrinsic, they cite no caselaw detailing that evidence of motive cannot be characterized as intrinsic evidence and instead must be subject to the limitations of Rule 404(b). In Defendants' reply, however, they argue that "the superseding indictment in this case specifically alleges that actions were taken against Ayanna to prevent and retaliate against her for providing information to law enforcement regarding <u>health care fraud</u>," not to prevent her from providing information about arson.[57]  Therefore, say Defendants, arson-related evidence is extrinsic to the charged offenses.[58]

For the same reasons stated in addressing Act 1, evidence of the arson relating to the buildings owned by Age Jr. is intrinsic.  As the Government notes, "[t]he jury must learn why [Womack and Ayanna] were subject to bribery, extortion, attempts to suborn perjury and ultimately the murder of Womack when other potential health care fraud witnesses were not."[59] The purpose of both the conspiracy directed toward Womack and the one directed toward Ayanna was to prevent their adverse testimony regarding the Defendants' past criminal acts, including this arson.  That Age Jr. instructed Womack to burn the buildings, that Womack, in turn, burned the buildings, and that Ayanna was aware of the arson scheme, taken together, is critical evidence to establish how and why the conspiracies to silence them came about and Defendants' modus operandi.  *See Watkins*, 591 F.3d at 784.  In other words, Ayanna and Womack's knowledge of and participation in the arson scheme is, as the Government notes, "permissible intrinsic evidence

---

[56] *Id*.
[57] R. Doc. 583 at 4 (emphasis in original).
[58] *Id*.
[59] R. Doc. 574 at 5.

establishing the groundwork for the crimes charged."[60]  Defendants' fear that the arson scheme could be revealed during the Medicare fraud case tends to prove (1) how and why the charged conspiracies were formed; and (2) Defendants' membership and participation in the conspiracies. *See Hankton*, 2016 WL 10950447, at *6.  Accordingly, evidence of Acts 2 and 3 is properly classified as intrinsic and thus admissible.

### 3.   Act 4 (the Medicare fraud)

The Government maintains that "[b]oth conspiracies initially began in relation to the health care fraud case."[61]  As such, it argues that evidence of the South Louisiana Home Health Care ("SLHHC") Medicare fraud, which gave rise to the Medicare fraud case, is admissible intrinsic evidence because it is "the object of the obstruction activities against the victims [*i.e.*, Womack and Ayanna]."[62]

Defendants disagree.  They argue that "[t]he fact that Age Jr. was tried for health care fraud, and that Ayanna Alvarez testified against him after the commission of the overt acts alleged may become known to the jury if it is made relevant as the trial unfolds but evidence proving the fraud itself … is not intrinsic to the charges here."[63]  Defendants conclude that "the existence of such a scheme would be evidence of motive, which falls under [Rule] 404(b)."[64]  In doing so, they again cite no caselaw holding that evidence of motive cannot be characterized as intrinsic but instead must be subject to the limitations of Rule 404(b).

Evidence of the Medicare fraud is plainly intrinsic.  In 2011, Age Jr., Ayanna, Womack, and others were indicted for Medicare fraud.[65]  That indictment triggered Defendants' fears that

---

[60] *Id.*
[61] *Id.* at 3.
[62] R. Doc. 560-2 at 2.
[63] R. Doc. 560-3 at 8.
[64] *Id.*
[65] R. Doc. 433 at 7.

potential Government witnesses, Ayanna and Womack, would cooperate against them and expose their criminal activity.[66]   Thus, the conspiracies charged were born in the face of Defendants' prosecution for the Medicare fraud.[67]   Evidence of this fraud is inextricably intertwined with the charged conspiracies for, without the fraud, there would be no Medicare fraud prosecution, no fear on Defendants' part that their fraud or their prior criminal acts could be revealed in witness testimony, and thus no reason to silence cooperators Ayanna and Womack.   The jury is not expected to understand, make factual determinations concerning, and come to a verdict on the crimes charged in a vacuum; they are entitled to know the facts, circumstances, and background of the crimes charged.   To that end, evidence of the Medicare fraud constitutes a necessary preliminary for how and why the conspiracies came about, pointing the jury to a prior conspiracy brought about by some of these same Defendants.   *See Watkins*, 591 F.3d at 784.   Therefore, because it is inextricably intertwined with the charged conspiracies, evidence of the Medicare fraud is properly classified as intrinsic and thus admissible.

### 4.  Act 5 (a life-insurance scheme involving Ayanna's ex-husband, Ron Alvarez)

The Government and Defendants agree that evidence of a life-insurance scheme involving Alvarez (the "Alvarez scheme") is properly classified as extrinsic.[68]   The parties disagree, however, on the admissibility of this extrinsic evidence.   According to the Government, Age Jr., Johnson, and Ayanna concocted the Alvarez scheme, wherein Ayanna's ex-husband, Alvarez, would be murdered so Ayanna, the beneficiary listed on his life insurance policy, could collect the insurance proceeds.[69]   Johnson, who later became Ayanna's husband, hired a "hit man" to murder

---

[66] *Id.*
[67] *Id.*
[68] R. Doc. 560 at 4-5.
[69] R. Doc. 433 at 2-3.

Alvarez and Age Jr. planned with an attorney to have this hit-man released from jail after the hit.[70] The Alvarez scheme, however, was foiled when Ayanna failed to timely pay the life insurance policy premiums.[71]

The Government argues that such evidence is relevant and admissible to show "the intent, knowledge, motive and the roles that Age Jr. and Johnson maintained in the two obstruction conspiracies charged in the indictment," namely, that Age Jr. is the leader of the scheme and Johnson finds the hit-man.[72]  Defendants argue that there is "no evidence whatsoever of such a scheme"[73] and, even if there were, the evidence is inadmissible because (1) the Government fails to explain how the Alvarez scheme evidences Defendants' intent, knowledge, motive, or roles in the charged conspiracies; and (2) the probative value of the evidence is far outweighed by its prejudicial impact.[74]

Extrinsic evidence such as the Alvarez scheme is admissible if it satisfies the two-prong test set forth in *Beechum*.  With respect to the first prong, the Government maintains that the Alvarez scheme is relevant to an issue other than character because it shows Age Jr. and Johnson's respective roles, knowledge, and intent to commit the charged murder-for-hire.[75]  Further, the Government argues that evidence of the Alvarez scheme "is also admissible to counter a likely defense in the form of Age Jr. and Johnson claiming that they had nothing to do with Womack's murder (*i.e.*, they lacked intent and did not have the roles alleged)."[76]  Where, as here, a defendant enters a plea of not guilty in a conspiracy case, the first prong of the *Beechum* test is satisfied because the plea "raises the issue of intent sufficiently to justify the admissibility of extrinsic

---

[70] *Id*. at 3.
[71] *Id*.
[72] R. Docs. 560-2 at 2; 574 at 6.
[73] R. Doc. 560-3 at 12.
[74] R. Docs. 560 at 5; 560-3 at 12.
[75] R. Doc. 574 at 6.
[76] *Id*.

offense evidence." *Jiminez-Elvirez*, 862 F.3d at 536.  The similarity of intent required between the extrinsic act and the charged crime is established if the defendant "indulg[ed] himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." *Beechum*, 582 F.2d at 911.  Here, evidence of the extrinsic offense, the Alvarez scheme, would show that Age Jr. and Johnson were previously involved in a murder-for-hire conspiracy having a similar intent as the murder-for-hire scheme charged here.  *See Cockrell*, 587 F.3d at 679 (holding that extrinsic offense evidence was admissible to prove intent when the evidence of the prior offense and the charged offense involved the same intent to distribute heroin).  Accordingly, the first prong is satisfied.

With respect to *Beechum*'s second prong, a court must determine whether the evidence (1) possesses probative value that is not substantially outweighed by its undue prejudice; and (2) meets the other requirements of Rule 403. The risk of relevant but prejudicial extrinsic evidence is not remedied by exclusion, but rather a limiting instruction.  *Pizarro*, 2017 WL 3390247, at *3 n.1. Further, "[t]he scope of Rule 403 is narrow and may be applied to exclude evidence only 'cautiously' and 'sparingly.'"  *Williams*, 708 F. App'x at 831 (quoting *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007)) (alterations omitted).  Where, as here, the close resemblance of the extrinsic offense to the charged offense establishes probity but also gives rise to prejudice to the defendant, "it simply does not follow that such similarity requires exclusion of the evidence." *Cockrell*, 587 F.3d at 679.  That is because "Rule 403 'would seem to require exclusion only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'"  *Id.* (quoting *Beechum*, 582 F.2d at 915 n.20).  Here, given the similarity of the offenses, there is no genuine risk that the evidence of the Alvarez scheme would

excite the emotions of the jury to irrational behavior, especially when the jury is given an extensive and immediate limiting instruction upon the admission of such extrinsic evidence.  *See id.* at 680. Accordingly, the parties will be ordered to submit a proposed limiting instruction for evidence related to Act 5.

### 5.  Act 6 (staged accidents and "bogus" insurance claims)

The Government argues that Age III and Wilson's involvement with gang members in staged accidents and "bogus" insurance claims is intrinsic to the charged conspiracies.[77]  The Government alleges that Age III and Wilson, when conspiring to hire someone to murder Womack, "used their knowledge and involvement with these gang members to ultimately hire Guillory for the assassination," and so, evidence of the acts is intrinsic.[78]

Defendants disagree.  Without any analysis, Defendants simply state that such evidence is extrinsic because the evidence "is neither inextricably intertwined with evidence related to the murder of Womack, nor is it a part of a single or unified episode."[79]  Further, in their reply, Defendants maintain that this evidence is extrinsic because "the superseding indictment contains no allegations about any crimes relating to fraudulent car accident claims, and so the Government's contention that this evidence is intrinsic to the offenses is belied by the indictment itself."[80]

The evidence is intrinsic.  Age III and Wilson's involvement with gang members in staged accidents and "bogus" insurance claims serves to complete the story as to why Age III and Wilson would have contact with gang members, which, in turn, placed them in a position to connect with Guillory and, later, along with the other conspirators, to hire him to murder Womack.  That is to say, through the staged accidents and insurance claims, Age III and Wilson became familiar with

---

[77] R. Doc. 560-2 at 3.
[78] *Id.*
[79] R. Doc. 560-3 at 8.
[80] R. Doc. 583 at 4.

the gang's violent activities and its specific members and, then, used their knowledge and connections to recruit Guillory for the assassination.[81]   Therefore, this evidence is inextricably intertwined with the charged offenses as it tends to prove how Defendants came to associate with one another and, consequently, how they became members of the charged conspiracies.   *See Watkins*, 591 F.3d at 784 (concluding that evidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy came about and how the defendant became a member); *see also United States v. King*, 684 F. App'x 451, 456 (5th Cir. 2017) (holding that evidence was intrinsic because it provided background information necessary for a jury to understand the structure of the conspiracy, the nature of the conspiratorial relationship between defendants, and how the conspiracy came about); *United States v. Lockhart*, 844 F.3d 501, 512 (5th Cir. 2016) (observing that gang evidence serves to complete the story as to why defendants would work together); *United States v. Williams*, 277 F. App'x 472, 475 (5th Cir. 2008) (concluding that district court did not abuse its discretion in characterizing as intrinsic the evidence that established the nature of the relationship among co-conspirators).

### 6.   Acts 7, 8, 10, 11, 12, 13, 14, 15, 22, 23, 24, 25, 27, and 28[82]

The Government seeks to admit evidence of the following acts as intrinsic: Act 7 (Guillory's leadership role and participation in a shootout with a rival gang which occurred shortly before he was hired to murder Womack); Act 8 (Guillory's participation as a gang member in a murder of a rival-gang member prior to Womack's murder); Act 10 (a July 2012 shootout wherein Guillory fired the same gun he used to kill Womack less than three weeks later); Act 11 (Guillory's

---

[81] R. Doc. 560-2 at 3.

[82] In their memorandum in support of their motion, Defendants group these acts together, asserting the same argument for each.  R. Doc. 560-3 at 8 (erroneously listing Act 23 a second time when reference to Act 24 was clearly intended, and erroneously listing Act 26 when Defendants concede this act is intrinsic).  For its analysis, the Court, too, will group the acts as Defendants have.

crash of the red Monte Carlo he drove when he murdered Womack); Act 12 (Guillory's efforts to hide the murder weapon after killing Womack and its ultimate transfer to minor and co-conspirator Raheem Jackson); Act 13 (Guillory's shanking a potential adverse witness while incarcerated); Act 14 (Guillory's "continued reign of violence at several prison facilities"); Act 15 (Guillory's retaliation against a Plaquemine Detention Center inmate); Act 22 (Guillory's involvement in the shootings of Breanna Allen, Shawna Pierce, Jonathan Lewis, and a rival-gang member); Act 23 (Guillory's "active involvement in unleashing violence including murder on rival-gang members" in 2012); Act 24 (Guillory's role in attempting to silence a Government witness while incarcerated); Act 25 (Wilson's connection to violent street-gang members); Act 27 (Age III and Wilson's criminal associations with gang members and Age III, Wilson, and Johnson's involvement in narcotics activities); and Act 28 (Guillory's acts of violence in general).[83]

Collectively, Defendants argue that "[n]one of the 'other crimes' evidence related to Stanton Guillory [*i.e.*, Acts 7, 8, 10, 11, 12, 13, 14, 15, 22, 23, 24, 25, 27, and 28] is inextricably intertwined with any evidence of a conspiracy to murder Milton Womack, and it is completely unrelated to any of the evidence regarding alleged efforts to 'silence' Ayanna."[84]   Further, Defendants argue that these acts are "not even evidence of 'knowledge' as that term is used in [Rule] 404(b)," which, according to Defendants, refers to knowledge that forms an element of the crime.[85]   Separately, Guillory argues that only the acts which occurred near the time of Womack's murder are intrinsic to the crimes charged in the indictment and serve a permitted purpose under Rule 404(b), but evidence regarding acts which occurred in the months before or years after

---

[83] R. Doc. 560-2 at 3-6.
[84] R. Doc. 560-3 at 8.
[85] *Id.*

Womack's murder "do nothing more than show that Mr. Guillory engaged in violent activities and are inadmissible propensity evidence under [Rule] 404(a)."[86]

### a. Acts that occurred before Womack's murder

The Government argues that evidence of the acts which occurred in the months before Womack's murder, namely, Acts 7, 8, 10, 22, 23, 25, 27, and 28, is properly classified as intrinsic. First, the Government contends that evidence of Act 7 – "Guillory's leadership role and participation in a shootout with a rival gang where two victims were killed … shortly before Guillory was hired to do the Womack assassination" – is intrinsic "to Guillory's ultimate involvement as a hired assassin of Womack."[87]   Second, it contends that evidence of Act 8 – "Guillory's participation as a gang member in a murder of a rival-gang member prior to the Womack assassination" – is intrinsic as to how and why Guillory was hired to assassinate Womack.[88]  Third, the Government contends that evidence of Act 10 – that in a July 2012 shootout Guillory fired the weapon he used less than three weeks later in Womack's murder – establishes Guillory's intent and knowledge and is "relevant to establishing that [Guillory] again used that weapon to assassinate Womack."[89]   Fourth, it contends that evidence of Act 22 – that Wilson and Age III hired Guillory as the hit-man because they knew he was a violent gang member who (1) killed Breanna Allen and Shawna Pierce;[90] (2) killed Jonathan Lewis; and (3) shot at a rival-gang member while in the red Monte Carlo – is intrinsic as it establishes why Guillory was chosen as the hit-man[91] and that it was Guillory, "not one of the juveniles with whom he was running at the time of Womack's murder," who killed Womack.[92]  Fifth, the Government contends that evidence

---

[86] R. Doc. 569 at 2, 6.
[87] R. Doc. 560-2 at 3.
[88] Id.
[89] Id.
[90] R. Doc. 433 at 3-4.
[91] R. Doc. 560-2 at 5.
[92] R. Doc. 574 at 8.

of Act 23 – that Guillory had "active involvement in unleashing violence" throughout 2012, including the murder of rival-gang members – is intrinsic evidence as it establishes why Guillory specifically was chosen as the hit-man.[93]  Sixth, it contends that evidence of Act 25 – Wilson's connection with violent street-gang members, including Guillory – is intrinsic as it establishes Wilson's role, recruitment of Guillory, and participation in the charged conspiracies.[94]  Seventh, it contends that evidence of Act 27 – that Age III and Wilson were involved in criminal activities with Guillory and other gang members – is intrinsic as it establishes their knowledge of Guillory's violent nature, which led to his hiring to murder Womack.[95]  And finally, the Government contends that evidence of Act 28 – Guillory's unspecified acts of violence – is relevant to establish why Defendants hired Guillory and Guillory's "willingness to silence a witness by murder."[96]

In addition to Defendants' general argument that none of the pre-Womack-murder acts is inextricably intertwined with either conspiracy,[97] Guillory argues that these acts "are not a part of the crimes charged in the Indictment," present an undue prejudicial effect, may bias and confuse the jury, and may call for individual mini-trials of each act, which could delay the trial itself.[98] Further, Guillory argues that it was not these acts but his "purported willingness to kill Womack which led to him being hired by the other defendants."[99]

---

[93] R. Doc. 560-2 at 6.
[94] R. Docs. 433 at 5; 560-2 at 6.
[95] R. Doc. 560-2 at 6.
[96] *Id*.
[97] R. Doc. 560-3 at 8.
[98] R. Doc. 569 at 4-5.
[99] R. Doc. 577 at 1.  Guillory also argues that the question of "why" Defendants chose him to kill Womack "is not a question which the jury will be called upon to decide."  R. Doc. 569 at 3.  Rather, says Guillory, the jury will have to decide "if" Guillory knew he was hired to kill a federal witness.  *Id*.  However, Guillory misapprehends the importance of the question "why" he was hired to kill Womack, ignoring that it tends to prove, at least, (1) the nature of his relationship with Defendants; (2) his membership in the conspiracy; and (3) the likelihood that the conspiracy's goal of murdering Womack would be accomplished.

The Court finds that Guillory's pre-Womack-murder acts are intrinsic to the crimes charged in the indictment.  After all, acts not alleged in an indictment may be admissible as part of the Government's proof.  *Watkins*, 591 F.3d at 784.  "Evidence of similar crimes occurring before the formation of the conspiracy is admissible if it sheds light on the circumstances under which the conspiracy was formed, because 'evidence of the establishment of the conspiracy is a legitimate part of the government's proof in establishing the conspiracies charged.'"  *Porter*, 2013 WL 5673607, at *5 (quoting *United States v. Lokey*, 945 F.2d 825, 834 (5th Cir. 1991)) (alterations omitted).  Here, these acts tend to establish, among other things, (1) why Guillory himself was hired to murder Womack and became a member of the conspiracy; (2) why it was feasible that, with Guillory as the hit-man, Womack would be murdered; (3) the nature of Guillory's relationship with Defendants; and (4) how the conspiracy came about.  *See King*, 684 F. App'x at 456.  Thus, Acts 7, 8, 10, 22, 23, 25, 27, and 28 are inextricably intertwined with the crimes charged and serve to complete the story of why defendants would work together.  *See Lockhart*, 844 F.3d at 512.

### b.  Acts that occurred near the time of Womack's murder

The Government argues that evidence of the acts which occurred near the time of Womack's murder, namely, Acts 11 and 12, is properly classified as intrinsic.  First, the Government contends that evidence of Act 11 – that just days after the murder Guillory crashed the red Monte Carlo he was driving at the time of Womack's murder – is intrinsic because "[h]is continued control over the Monte Carlo and his attempts to flee law enforcement ... establish[] his involvement in the Womack-murder conspiracy."[100]  Second, the Government contends that evidence of Act 12 – Guillory's efforts to hide the murder weapon after killing Womack and the

---

[100] R. Docs. 433 at 4; 560-2 at 3.

weapon's ultimate transfer to Jackson – is intrinsic as it establishes Guillory's involvement and associations in the Womack-murder conspiracy.[101]

Defendants (except Guillory) assert that Acts 11 and 12 are not intrinsic acts,[102] but Guillory agrees with the Government that these acts are intrinsic.[103]  Nevertheless, Guillory argues that this evidence should be limited at trial in order to minimize the risk of undue prejudice.[104]  For the reasons stated by the Government and Guillory, the Court finds that evidence of Acts 11 and 12 is best characterized as intrinsic and thus admissible in that it establishes, among other things, Guillory's involvement and role in the Womack-murder conspiracy.  *See Abrego*, 141 F.3d at 175.  However, the Court agrees that the risk of undue prejudice should be minimized through a limiting instruction.  *See Pizarro*, 2017 WL 3390247, at *3 n.1.  Accordingly, the parties will be ordered to propose a limiting instruction for evidence regarding Acts 11 and 12.

### c.  Acts that occurred sometime after Womack's murder

The Government argues that evidence of the acts which occurred well after Womack's murder, namely, Acts 13, 14, 15, and 24, is properly classified as admissible extrinsic evidence.  First, the Government contends that evidence of Act 13 – Guillory's shanking a potential adverse witness while incarcerated – is admissible because it (1) is relevant to Guillory's intent and knowledge concerning a conspiracy to murder a witness in another criminal prosecution; and (2) tends to prove that "Guillory, and not his two juvenile cohorts, was individually responsible for murdering Womack."[105]  Second, the Government contends that evidence of Act 14 – Guillory's "continued reign of violence at several prison facilities" – is admissible because it (1) shows that

---

[101] R. Docs. 433 at 4; 560-2 at 3.
[102] R. Doc. 560-3 at 8.
[103] R. Doc. 569 at 2, 6.
[104] *Id*. at 6.
[105] R. Doc. 560-2 at 3-4.

he was "the go-to guy" for violence, which is one of the reasons Guillory was hired to kill Womack in the first place; and (2) shows that Guillory, not the two juveniles he was with at the time of the murder, "was ready, willing and able to perpetrate violence including murder and was chosen just for that purpose."[106]   Third, the Government contends that evidence of Act 15 – Guillory's retaliation against a Plaquemine Detention Center inmate – is admissible for the same reasons pertaining to Act 14.[107]   Fourth, the Government contends that evidence of Act 24 – Guillory's role in attempting to silence a Government witness while incarcerated – is admissible because, in addition to the reasons advanced for admitting evidence of Acts 13 through 15, Act 24 is "relevant to knowledge, intent, and identity and relates to the shanking a potential witness in [a separate] trial."[108]   Finally, the Government contends that these post-Womack-murder acts "further highlight[] the reason he was selected as the hitman in the first place" and shows that Guillory, "not the juveniles, harbored a deep hatred toward cooperators and would thus be willing to take the hit against a federal witness."[109]

Defendants contend that these acts are not admissible extrinsic evidence and, moreover, are "not even evidence of 'knowledge' as that term is used in [Rule] 404(b)," which they say refers to knowledge that forms an element of the crime.[110]   Separately, Guillory argues that the Government "fails to explain how these [post-murder] incidents – so remote in time and so dissimilar to the Womack murder – serve a legitimate purpose."[111]   The Government's true purpose for admitting these acts into evidence, says Guillory, "is to establish [that] Guillory has a propensity for violence so the jury may infer he acted consistent therewith in the killing [of] Milton

---

[106] *Id.* at 4.
[107] *Id.*
[108] *Id.* at 6.
[109] R. Doc. 574 at 9.
[110] R. Doc. 560-3 at 8.
[111] R. Doc. 569 at 7.

Womack."[112]  Guillory argues further that these post-murder incidents "have no probative value to the charged crimes" as they occurred long after the murder and are "wholly dissimilar to it,"[113] and they cannot be used as proof of identity or knowledge.[114]  So, says Guillory, this evidence is inadmissible because it (1) presents a danger of unfair prejudice; (2) strikes fear into the jury that Guillory will continue to commit violent acts, which will then make a jury "much less likely to acquit Stanton Guillory and release him from prison"; and (3) requires a mini-trial for each act alleged, which would unduly delay the progress of trial.[115]

The Court finds that the evidence of Guillory's post-murder acts is inadmissible extrinsic evidence.  Extrinsic evidence, such as these post-murder acts, is admissible if it satisfies the two-prong test set forth in *Beechum*.  With respect to the first prong, the Government maintains that the post-murder acts are relevant to an issue other than character because, among other things, they (1) support why Guillory was chosen as the assassin in the first place; and (2) tend to prove that it was Guillory himself who killed Womack, not the two juveniles with whom Guillory associated. Further, says the Government, where, as here, a defendant enters a plea of not guilty in a conspiracy case, the first prong of the *Beechum* test is satisfied because the plea "raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence."  *Jiminez-Elvirez*, 862 F.3d at 536.  The similarity of intent required between the extrinsic act and the charged crime is established if the defendant "indulg[ed] himself in the same state of mind in the perpetration of both the extrinsic and charged offenses."  *Beechum*, 582 F.2d at 911.  Here, evidence of the post-murder acts tends to prove that Guillory indulged himself in the same state of mind as the conspiracy charged: both involved Guillory's intent to harm adverse government witnesses.  *See*

---

[112] *Id.*
[113] *Id.*
[114] R. Doc. 577 at 4.
[115] R. Doc. 569 at 7.

*Cockrell*, 587 F.3d at 679 (holding that extrinsic offense evidence was admissible to prove intent when the evidence of the prior offense and the charged offense involved the same intent to distribute heroin).  Hence, the first prong is satisfied.

With respect to the second prong, a court must determine whether the evidence (1) possesses probative value that is not substantially outweighed by its undue prejudice; and (2) meets the other requirements of Rule 403.  *Beechum*, 582 F.2d at 911.  Here, the requirements of the second prong are not met.  Evidence of Guillory's violence against inmates and cooperating witnesses certainly carries the potential to "incite the jury to irrational decision by its force on human emotion."  *Id.* at 917.  As Guillory explains, the jury will be less likely to fairly weigh the evidence for fear that he will continue to commit violent acts.  Moreover, the extrinsic acts are remote in time from – and, in fact, occurred well after – the events upon which the indictment is bottomed.  Further, the Government has available to it other evidence to prove the reason Guillory was hired and his identity as the assassin, all in a way that is not unfairly prejudicial or tending to show only Guillory's propensity for violence.  Therefore, evidence of Acts 13, 14, 15, and 24 is excluded from trial as impermissible extrinsic evidence.

### 7. Act 9 (Age III's association with Ronald "Ronu" Wilson, III when they were shot at by adversaries)

The Government argues that evidence of Age III's association with Ronu when they were shot at by adversaries is intrinsic because it tends to prove (1) Age III's knowledge of the violent activities of various gang members; and (2) Age III's involvement in the hiring of a gang member to assassinate Womack.[116]  Defendants disagree, conclusorily asserting that this evidence "is

---

[116] R. Doc. 560-2 at 3.

neither inextricably intertwined with the evidence needed to prove the crimes in the indictment, nor can it be described as part of a unified criminal episode."[117]

The evidence is intrinsic.  Age III and Ronu's association with one another and with violent gang members serves to complete the story as to how they connected with Guillory.  This shootout tends to prove Age III's firsthand knowledge of the violent acts gang members commit, leading Defendants to identify a violent gang from which it recruited a violent member to carry out the assassination at the heart of a murder-for-hire conspiracy.  Thus, this evidence is inextricably intertwined with the charged offenses as it shows how Defendants came to associate with one another and, consequently, how they became members of the charged conspiracies.  *See Watkins*, 591 F.3d at 784 (concluding that evidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy came about and how the defendant became a member).

### 8.  Act 16 (Age III's financial motive to disrupt the trial in the Medicare fraud case)

The Government argues that Age III's financial relationship with SLHHC, the entity through which Defendants committed the Medicare fraud, is intrinsic to the charged offenses.[118]  Specifically, the Government contends that Age III had a financial motive in having the Medicare fraud case disrupted because he was on SLHHC's payroll and, therefore, benefitted financially when it was in operation.[119]  In response, Defendants merely state that this is "evidence of motive, which falls under [Rule] 404(b)."[120]

This evidence is intrinsic.  Age III's financial motive and his motive to silence both Womack and Ayanna stem from the same criminal episode (*viz.*, efforts to disrupt the Medicare fraud trial).  Whether Age III's actions were propelled by a financial benefit from SLHHC or by a

---

[117] R. Doc. 560-3 at 9.
[118] R. Doc. 560-2 at 4.
[119] *Id.*
[120] R. Doc. 560-3 at 9.

fear of other crimes being revealed, the object of his actions was the same – to disrupt the Medicare fraud trial.  Because Age III's financial interest and the charged conspiracies are part of a single criminal episode, and are inextricably intertwined, the evidence of them is properly classified as intrinsic and thus admissible.  *See Williams*, 708 F. App'x at 829.

> **9.  Act 17 (Age Jr.'s company "Houses R Us," which was used (a) as a conduit to obtain cash that was provided to Womack as hush money, and (b) to further an insurance-fraud scheme)**

The Government contends that evidence of Age Jr.'s company "Houses R Us" is intrinsic to the crimes charged because (1) "[t]he company was used as a conduit to obtain cash that was ultimately provided to Womack as 'hush' money so that he would not plead guilty in the Medicare fraud case or cooperate with law enforcement"; and (2) proceeds from the insurance-fraud scheme (involving an arson) were used to purchase real estate owned by Age Jr. and managed by Houses R Us.[121]  Defendants disagree.  They maintain that evidence of Houses R Us is "plainly not inextricably intertwined with the charges in this case" and would result in "a trial within a trial."[122] And, say Defendants, even if the evidence is extrinsic, its admissibility is "questionable" because the Government has misconstrued the term "knowledge" as it is used in Rule 404(b).[123]

Evidence related to Houses R Us is properly classified as intrinsic.  First, use of the company's cash to sway Womack against cooperating and testifying in the Medicare fraud case is an act that is inextricably intertwined with the crimes charged in the indictment.  For example, Count 9 of the indictment charges Defendants with providing cash and other benefits to a potential witness to prevent the person from testifying in the Medicare fraud case.[124]  That cash, the Government contends, was funneled through Houses R Us and then used in an attempt to silence

---

[121] R. Doc. 560-2 at 4-5.
[122] R. Doc. 560-3 at 9.
[123] *Id.*
[124] R. Doc. 52 at 8-9.

Womack; therefore, the act is inextricably intertwined with the conspiracy to prevent Womack from testifying. *See Watkins*, 591 F.3d at 784 (evidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy was structured). Second, Ayanna's alleged knowledge that proceeds from the insurance-fraud scheme were used to purchase real estate that Houses R Us managed is inextricably intertwined with the plot to silence her – a plot stemming from Defendants' fear that she would cooperate against them and expose their criminal activity, including the insurance-fraud scheme and the use of Houses R Us as a conduit for the proceeds derived from that scheme. Evidence concerning Houses R Us, then, provides context for understanding Defendants' conspiracy and actions to silence Ayanna, highlighting their reasons for conspiring and tending to prove Defendants' membership and participation in the charged offenses. *See, e.g., Watkins*, 591 F.3d at 784 (observing that evidence is intrinsic to a conspiracy if relevant to establishing how the conspiracy came about and how the defendant became a member); *Rice*, 607 F.3d at 141 (observing that intrinsic evidence is admissible to complete the story of the crime by providing context of the events).[125]

## IV.   CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that evidence of the following intrinsic acts is admissible: Acts 1, 2, 3,

---

[125] Defendants also argue that the Government's notice of intent to introduce extrinsic evidence does not comply with the additional notice requirements of the current version of Rule 404(b), which was amended with an effective date (December 1, 2020) occurring after the Government originally filed its notice (August 3, 2020). R. Doc. 583. The rule now requires that the Government provide reasonable notice of other-act evidence it intends to introduce at trial and to "articulate in the notice the permitted [*i.e.,* non-propensity] purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3). Because the Court has determined that all but one of the acts in question here are either intrinsic, and consequently outside the ambit of Rule 404(b), or extrinsic but inadmissible evidence, the notice requirements of Rule 404(b) are largely irrelevant. For the single act (namely, Act 5) found to constitute admissible extrinsic evidence, the Court holds that the Government satisfied the notice requirements of the rule by supplementing its original notice with its March 19, 2021 letter (R. Doc. 560-2), which articulates the Government's purpose and reasoning for offering the evidence related to Act 5. *Id.* at 2. This is all the amended rule requires.

4, 6, 7, 8, 9, 10, 11, 12, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 27, and 28.

IT IS FURTHER ORDERED that evidence of the following extrinsic act is admissible: Act 5.

IT IS FURTHER ORDERED that evidence of the following acts is inadmissible: Acts 13, 14, 15, and 24.

New Orleans, Louisiana, this 29th day of December, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE