UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 16-32 |
| LOUIS AGE JR., *et al.* | SECTION M |

## ORDER & REASONS

Before the Court are motions for new trial filed by defendants Ronald Wilson, Jr.[1] and Louis Age Jr.[2]  The United States of America (the "Government") responds in opposition,[3] and Age Jr. replies in further support of his motion.[4]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying both motions.

## I.    BACKGROUND

On August 17, 2017, the grand jury in the United States District Court for the Eastern District of Louisiana returned a superseding indictment in this case charging the defendants, Age Jr., Louis Age III, Wilson, and Stanton Guillory,[5] with various counts arising from the July 27, 2012 murder of Milton Womack.[6]  Womack was a co-defendant in a Medicare fraud case filed in the United States District Court for the Middle District of Louisiana, and styled *United States v. Louis T. Age, Jr., et al.*, Criminal Action No. 11-105.  Womack was murdered two days after documents were filed in that case indicating that he was changing his plea to guilty.  The Government's theory of this case was that the co-defendants here conspired to murder Womack in

---

[1] R. Doc. 897.
[2] R. Doc. 912.
[3] R.. Doc. 922.
[4] R. Doc. 930.
[5] A fifth co-defendant, Kendrick Johnson, pleaded guilty to a superseding bill of information.  R. Doc. 629.
[6] R. Doc. 52.  Only Guillory was charged in the original indictment.  R. Doc. 3.

1

retaliation for his past cooperation in the Medicare fraud case and to prevent him from testifying at trial in that matter.

To that end, Count 1 of the indictment charged all of the defendants with conspiring to commit murder for hire, in violation of 18 U.S.C. § 1958.[7]  Count 2 charged the defendants with using a facility of interstate commerce (a cell phone) to commit murder for hire, in violation of 18 U.S.C. §§ 1958 and 2.[8]  In Count 3, the defendants were charged with conspiring to murder Womack to prevent him from testifying in the Medicare fraud case, in violation of 18 U.S.C. §§ 1512(a)(3)(A) and 1512(k).[9]  Count 4 charged the defendants with killing Womack to prevent him from testifying in the Medicare fraud case, in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(3)(A), and 2.[10]  Count 5 charged Age Jr. and Age III with killing Womack to prevent him from communicating with law enforcement about his knowledge of the Medicare fraud scheme, in violation of 18 U.S.C. §§ 1512(a)(1)(C), 1512(a)(3)(A), and 2.[11]  In Count 6, the defendants were charged with conspiring to murder Womack in retaliation for his cooperation with law enforcement, in violation of 18 U.S.C. §§ 1513(a)(2)(A) and 1513(f).[12]  Count 7 charged the defendants with killing Womack in retaliation for his cooperation with law enforcement, in violation of 18 U.S.C. §§ 1513(a)(1)(B), 1513(a)(2)(A), and 2.[13]  Count 8 charged Age Jr. and Age III with conspiring to use intimidation, threats, and corrupt persuasion to influence, delay, or prevent testimony in the Medicare fraud case and hindering, delaying, and preventing further communication with law enforcement relating to the commission or possible commission of a

---

[7] R. Doc. 52 at 2.
[8] *Id.* at 2-3.
[9] *Id.* at 3-4.
[10] *Id.* at 4-5.
[11] *Id.* at 5.
[12] *Id.* at 5-6.
[13] *Id.* at 6.

federal offense (healthcare fraud), all in violation of 18 U.S.C. § 1512(k).[14]  In Count 9, Age Jr. and Age III were charged with conspiring to retaliate against a witness for aiding law enforcement in the Medicare fraud case, in violation of 18 U.S.C. § 1513(f).[15]  In Count 11, Age III was charged with making false statements to FBI agents in violation of 18 U.S.C. § 1001.[16]

A jury trial was held from April 4 to April 27, 2022.[17]  The jury convicted Age Jr., Wilson, and Guillory on all counts in which they were charged, and Age III on all counts in which he was charged, except Count 9.[18]  The Government called numerous witnesses, including law enforcement officers, Womack's court-appointed criminal defense attorney (Michael Fiser), Age Jr.'s daughter (Ayanna Age), cooperating witnesses, and jailhouse informants.[19]  Through these witnesses and the documentary evidence, the Government proved at least the following.  Age Jr. determined to kill Womack in retaliation for his cooperation with law enforcement and to prevent further cooperation, including his testifying at the healthcare fraud trial.  Age III, at his father's behest, approached his best friend, Wilson, to assist in finding a hitman.  Wilson, through his son, supplied the conspirators a conduit to the Young Mafia Fellas ("YMF") street gang.  Wilson vouched for Age III with the gang, and he and Age III floated the hit to the YMF members.  Guillory, a YMF member who had committed other murders and various violent acts, accepted the contract.  Wilson and Age Jr. then stalked Womack to provide his location to Guillory.  On July 27, 2012, Guillory murdered Womack.  After the hit, Age III failed to pay Guillory the agreed-upon amount.  Wilson then approached Age Jr., via a meeting set up by Ayanna, in an attempt to prevent a falling out with Guillory concerning payment.

---

[14] *Id.* at 6-8.
[15] *Id.* at 8-9.
[16] *Id.* at 10-11.
[17] R. Docs. 834; 880.
[18] R. Doc. 881.
[19] R. Docs. 834; 837; 840; 843; 846; 847; 856; 857; 867; 868; 874; 875; 879; 880.

II.     **LAW & ANALYSIS**

   **A. Legal Standard for a New Trial**

   Rule 33(a) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Courts exercise their Rule 33 power in two situations: (1) "when error infects the trial – perhaps the erroneous admission or exclusion of evidence, inflammatory comments by a lawyer, or faulty jury instructions," or (2) "when the court believes the evidence weighs heavily against the verdict." *United States v. Crittenden*, 46 F.4th ---, 2022 WL 3453540, at *4 (5th Cir. Aug. 18, 2022) (quotation omitted). Rule 33 motions are disfavored, reviewed with caution, and left to the district court's discretion. *United States v. Pratt*, 807 F.3d 641, 645 (5th Cir. 2015). The Fifth Circuit has "generally held that the trial court should not grant a motion for new trial unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *United States v. Mendoza*, 685 F. App'x. 345, 350 (5th Cir. 2017) (quotation omitted). Granting a motion for new trial is proper only where the defendant's "substantial rights" have been harmed by a miscarriage of justice that may consist of errors and omissions considered for their cumulative effect on the trial proceedings. *United States v. Bowen*, 799 F.3d 336, 349 (5th Cir. 2015).

   **B. Wilson's Motion for New Trial**

   Wilson argues that his substantial rights were harmed by being tried with his co-defendants.[20] According to Wilson, little of the evidence at trial pertained to him and he was unduly prejudiced by the admission of evidence concerning the Age family's crimes (prior fraud schemes and a previous murder-for-hire plot) and evidence of Guillory's violent crimes.[21] Wilson

---

[20] R. Doc. 897-1.
[21] *Id.* at 1-10.

posits that there may have been a different result if he were tried separately because he had a peripheral role in the alleged conspiracy.[22]

In opposition, the Government argues that Wilson was properly tried with his co-conspirators because the Government could not have proved its case against any one defendant without putting on evidence related to all the co-defendants.[23]  Specifically, Age Jr.'s conviction required evidence linking him to Guillory through the contacts and acts of Age III and Wilson.[24]  Guillory's conviction required evidence that he was suited for the job and agreed to kill Womack to prevent him from cooperating with authorities and testifying at the healthcare fraud trial.[25]  And Age III and Wilson's convictions required an explanation of the underlying healthcare fraud case that provided the motive for the murder and also required evidence of their involvement in facilitating the murder.[26]  Moreover in a conspiracy, the actions of each member of the conspiracy are effectively the actions of every other member and are necessary to prove both the conspiracy itself and the case against any one defendant.[27]  The Government argues further that there was no suggestion at trial that Wilson was involved in the underlying healthcare fraud, the Age family's prior murder-for-hire plot, or Guillory's other criminal conduct and so the admission of such evidence was not unduly prejudicial.[28]

Pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure, defendants may be charged together in one indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  "There is a preference in the federal system for joint trials of defendants who are

---

[22] *Id.*
[23] R. Doc. 922 at 3-7.
[24] *Id.* at 3-7.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*

indicted together" because joint trials promote judicial efficiency and serve the interests of justice by avoiding the risk of inconsistent verdicts. *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209-10 (1987)). This is particularly true in conspiracy cases. *United States v. Ledezma-Cepeda*, 894 F.3d 686, 690 (5th Cir. 2018). Rule 14 permits a district court to order separate trials "[i]f the joinder of offenses or defendants in an indictment … appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). Severance under Rule 14 "is an *exception* warranted 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Ledezma-Cepeda*, 894 F.3d at 690 (quoting *Zafiro*, 506 U.S. at 539) (emphasis in original; citation omitted). "[I]n conspiracy cases, [the Fifth Circuit] generally favors specific instructions over severance … because it is generally presumed that juries follow the instructions given to them by the district court and are capable of compartmentalizing the evidence against each defendant." *Id.* (quotations, alterations, and footnotes omitted).

Wilson's post-verdict motion for new trial raises the same argument he made in his pretrial motion for severance, namely, the potential for a "spillover effect" due to the admission of other defendants' prior crimes.[29] The Court denied Wilson's pretrial motion, holding that severance was not warranted because the defendants, who were indicted together for a conspiracy to commit the same crime at the same time, did not show a specific and compelling prejudice that would result from a joint trial.[30] The Court further reasoned that evidence of the Medicare fraud case was central to this case because it provided the motive for Womack's murder and that a limiting

---

[29] *Compare* R. Doc. 548 *with* R. Doc. 897.
[30] R. Doc. 580 at 10-11 (discussing and applying the Fifth Circuit's decision in *Ledezma-Cepeda*, a murder-for-hire case holding that severance was not warranted when all of the co-defendants, including the hitman, "were charged *together*, for the very *same crime*, committed at the *same time*." 894 F.3d at 692 (emphasis in original)).

instruction could cure any potential prejudice resulting from evidence of Guillory's prior violence.[31]

Nothing has changed post-trial. Wilson still has not shown any specific prejudice from being tried with his co-conspirators. The evidence admitted regarding the Medicare fraud trial was critical to understanding and proving the crimes of each co-defendant because it established the motive for Womack's murder. Similarly, the evidence of Guillory's violent past was relevant to the trial of all of the co-defendants because it explained why he was hired as the hitman. Age III did not find Guillory on his own. The connection was provided by Wilson. Wilson, through his son, was known to the YMF gang of which Guillory was part, and the gang known to him. Wilson aided Age III in locating Womack for Guillory. And, following the murder, Wilson acted to stem a potential dust-up between Age Jr. and Guillory regarding payment. Much, if not all, of the same evidence would have been admitted in a solo trial of Wilson because the evidence was necessary to explain Wilson's role in the conspiracy. Further, a jailhouse informant testified that Wilson confessed the crime to him and provided details regarding the co-conspirators' connections to one another. Moreover, throughout the trial, there was no indication or inference by the Government or any witness that Wilson was in any way involved in the healthcare fraud, the Age family's prior murder-for-hire plot, or Guillory's prior crimes. To guard against this very concern, the Court was asked to give and did give the jury limiting instructions as to this evidence. In sum, Wilson has not shown that his substantial rights were violated; therefore, a new trial is not warranted.

## C. Age Jr.'s Motion for New Trial

Age Jr. argues that his substantial rights were violated when the Court admitted testimony from Fiser consisting of statements Womack made to him regarding his fear of Age Jr.[32]

---

[31] *Id.* at 11-12.
[32] R. Doc. 912-1 at 1-11.

According to Age Jr., those statements were protected by the attorney-client privilege, and only Womack could waive the privilege.[33]  Age Jr. maintains that Womack never waived the privilege and Fiser's prior disclosure of those statements to law enforcement did not negate the privilege.[34]  Age Jr. contends that Fiser's emotional testimony was highly prejudicial to him because it was clear that Fiser wanted to testify, Age Jr. had no meaningful way to counter the testimony considering Womack was unavailable for cross-examination, and, without Fiser, the Government's case against Age Jr. relied on Ayanna, who he says was not a credible witness.[35]

In opposition, the Government argues that Age Jr.'s substantial rights were not violated because the Court properly admitted Fiser's testimony.[36]  The Government points out that, in the three weeks that Fiser represented Womack immediately prior to his death, Womack made it clear to Fiser that he wanted to cooperate with law enforcement.[37]  On July 11, 2012, Womack told Fiser that he was being watched, intimidated, extorted, and bribed by Age Jr. and his "company lawyer," Hillard Fazande, and that Fazande was pressuring Womack to lie and falsify records in the healthcare fraud scheme.[38]  After Womack's murder, a grand jury investigation was opened and Judge James J. Brady of the Middle District of Louisiana ordered that Fiser was relieved of his obligation to maintain the confidentiality of Womack's communications with him, thereby allowing him to speak with law enforcement regarding these communications.  The Government says that these disclosures to third parties eliminated any bar to Fiser's testimony in this case.[39]  Further, the Government argues that many of the statements Womack made to Fiser are not protected by the attorney-client privilege because they were not made in connection with seeking

---

[33] *Id.*
[34] *Id.*
[35] *Id.* at 10-11.
[36] R. Doc. 922 at 7-16.
[37] *Id.* at 7.
[38] *Id.* at 7-8.
[39] *Id.* at 8.

or rendering legal advice.[40]  Instead, Womack was communicating his fears about Age Jr. to Fiser, among others including his girlfriend and cousin, who also testified.[41]  Finally, the Government argues that Fiser's testimony was not so important as to warrant a new trial because there was a lot of other evidence against Age Jr. on these same points.[42]

Age Jr.'s post-trial motion for a new trial rehashes his pretrial motion *in limine* to exclude Fiser's testimony.[43]  The Court denied the pretrial motion, holding that any communication Womack had with Fiser in the presence of third parties, including the government agents, is not privileged.[44]  The Court further held that Age Jr. (and the other defendants) could not invoke Womack's attorney-client privilege to prevent Fiser from testifying.[45]  Fiser testified freely at trial without asserting the attorney-client privilege on Womack's behalf.  Age Jr. has not cited any authority stating that a person on trial for murder can assert the victim's attorney-client privilege to prevent the victim's attorney from testifying (1) that the victim expressed fear of the defendant, (2) about statements made to third parties, or (3) about statements the victim intended to be disclosed to law enforcement.

In his motion, Age Jr. fails to identify any specific testimony of Fiser that he claims constituted a privileged communication.  Indeed, much of Fiser's testimony concerned Womack's statements about his fear of Age Jr., which Womack also communicated to numerous friends and family members.  Those statements do not implicate legal advice and, therefore, were not privileged.  Fiser also testified as to what Womack told government agents.  Again, those statements, having been made in the presence of third parties, were not privileged.

---

[40] *Id.* at 8-9.
[41] *Id.* at 9, 14-15.
[42] *Id.* at 15-16.
[43] *Compare* R. Doc. 672 *with* R. Doc. 912.
[44] R. Doc. 749.
[45] *Id.*

Nevertheless, insisting that Fiser's testimony disclosed privileged communications, Age Jr. turns to the Supreme Court's decision in *Swidler & Berlin v. United States*, 524 U.S. 399 (1998), to argue that Womack's communications to Fiser should not have been admitted because the attorney-client privilege survives death and Fiser did not have the right to waive Womack's privilege. *Swidler*, which involved the Whitewater special prosecutor's effort to obtain notes of a meeting between Vince Foster and his attorneys that occurred the day before his suicide, is distinguishable in at least two respects. First, while *Swidler* holds that the privilege generally survives death, the Court was careful to preserve an exception for a posthumous disclosure that "furthers the client's intent." *Id.* at 405-06. There was no indication in *Swidler* that Foster met with his attorneys to cooperate with the special prosecutor or relay to the special prosecutor what was contained in the notes. In contrast, because Womack had expressed to Fiser his intention to talk to and cooperate with government agents,[46] including advising them about Age Jr.'s efforts to intimidate and prevent him from testifying truthfully in the Medicare fraud trial, Womack waived his privilege and Fiser's testimony – which essentially made the disclosures Womack had indicated he wanted to make – falls squarely within the *Swidler* exception for disclosure that "furthers the client's intent." The Court is confident that this argument was made to Judge Brady in connection with the Middle District's grand jury investigation into Womack's murder and constitutes the basis for his ruling that Fiser could speak with government agents about his communications with Womack.

Second, *Swidler* is also distinguishable because it did not involve forfeiture by wrongdoing. Before the trial of Age Jr. and his co-defendants, the Court granted the Government's motion urging the forfeiture-by-wrongdoing exception to hearsay, thereby allowing various witnesses to

---

[46] *See, e.g.*, R. Doc. 930 at 9 (quoting Womack's statements to Fiser: "I want to come in and cooperate. I want to plead. I want to talk.").

testify about what Womack told them concerning the healthcare fraud, the effort to silence him through Fazande, and his fear of Age Jr.[47]  The law allows such testimony because a defendant should not be permitted to avoid its being offered against him by causing a witness's "unavailability" through wrongdoing (*e.g.*, murder).  *See* Fed. R. Evid. 804(b)(6).  The same rationale – namely, avoidance of the intolerable incentive for defendants to kill witnesses against them – obtains as to the attorney-client privilege when the client evinces his intent to testify: a defendant should not be permitted to prevent a lawyer from testifying about a client's communications when the defendant has procured the client's death and, consequently, his unavailability to waive the privilege and testify on the witness stand about the gist of his communications with counsel.  This is especially true, where, as here, the client told his attorney that he wanted to talk with government agents.  At its crux, unlike this case where Womack's murder was arranged by Age Jr. and his co-defendants, there was no contention in *Swidler* that Foster's death was procured by the persons who were being investigated and against whom the notes were presumably sought to be used.  Thus, *Swidler* is inapposite for this additional reason.

Regardless, Age Jr.'s motion should also be denied because Fiser's testimony was not so crucial to the trial as to necessitate a new trial.  As reviewed by the Government, there was plenty of other testimony regarding Womack's fear of Age Jr. and Age Jr.'s guilt.

### III.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Wilson's motion for new trial (R. Doc. 897) is DENIED.

IT IS FURTHER ORDERED that Age Jr.'s motion for new trial (R. Doc. 912) is DENIED.

---

[47] R. Doc. 817.

New Orleans, Louisiana, this 12th day of September, 2022.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE